HALSTEAD *vs.* THE MAYOR, &c. OF THE CITY OF NEW-YORK.

A draft, or warrant, drawn by the corporation of the city of New-York, upon the treasurer of the city, not in the course of its proper legitimate business, is void in the hands of a bona fide holder, without actual notice of its consideration.

The corporation of the city of New-York has no general power, express or implied, to issue negotiable paper. It has only a special and conditional implied power for that purpose, i. e. it is necessary as a condition precedent to the validity of such paper that the debt which forms its consideration should be contracted in the course of the proper legitimate business of the corporation.

The charter of the city of New-York being a public act, every person who takes the negotiable paper of the corporation is bound to know the extent of its powers; and is presumed to receive it with a full knowledge that such corporation has only a limited and conditional power to issue it. He is thus put upon inquiry, and takes it at his peril. *Per* EDWARDS, J.

As a general rule, the power of the corporation of New-York to institute and defend suits, can only be exercised in cases where the corporation is a party to the suit. But there are some exceptions, in cases where the corporation, though not a nominal party to the record, is the real party in interest. *Per* EDWARDS, J.

THIS was an action of assumpsit, tried at the New-York circuit in March, 1848, before Justice EDWARDS. The plaintiff declared upon two drafts or warrants, one for $2661,27, dated May 10th, 1847, and one for $300, dated May 11th, 1847. The first was in the words and figures following:

"New-York, May, 10, 1847. No. 2557. $2661,27.

To the Treasurer of the city of New-York, at the Bank of the state of New-York. Pay Peter A. Cowdrey, or order, two thousand six hundred and sixty-one dollars, for defendant's costs in the case of R. H. Morris and 8 others, former supervisors.

A. H. MICKLE, Mayor.

Contingencies. Countersigned. D. T. VALENTINE, Clerk.  JOHN EWEN, Comptroller."

Endorsed,

P. A. Cowdrey.

J. H. Cowdrey.

Halstead v. The Mayor, &c. of New-York.

The second draft or warrant was in the same form, except that it required the payment of $300 to Peter A. Cowdrey or order, "for counsel fees of the defendants in the matter of R. H. Morris and eight others, former supervisors." It was endorsed by P. A. Cowdrey and O. & N. Wetmore. The signatures of the persons signing the drafts, and their official characters, was duly proved, as well as the signatures of the endorsers. An extract from the ordinance of the corporation entitled "an ordinance concerning the department of finance," passed May 14, 1839, was then read in evidence as follows: "§ 4. It shall be the duty of the comptroller to draw and sign all warrants on the chamberlain for moneys which he shall be duly authorized to draw from the treasury, and present the same to the mayor and clerk of the common council, to be countersigned by them respectively." The protest of the drafts for non-payment, and notice thereof to the defendants, was duly proved. And after proving the amount due for principal, interest and protest, the plaintiff rested. It was then proved on the part of the defendants that the consideration for the drafts was as follows: That some time in or about September, 1841, separate suits were commenced in the name of the people of the state of New-York against Robert H. Morris and 7 others, supervisors of the city and county of New-York, to recover the penalty of $250 from each of them, for neglecting and refusing to audit and allow the account of James Lynch, one of the associate justices of the court of general sessions of the city of New-York, as required by the fourth section of the act entitled "An act to enable the supervisors of the city and county of New-York to raise money by tax," passed May, 26, 1844. That on the eighth day of May, one thousand eight hundred and forty-seven, a resolution was passed by the common council of the said city, as follows: "Resolved, that the comptroller be and is hereby authorized and directed to pay the amounts of the several judgments against the said supervisors, with the costs to be taxed, incurred by them in the defence of said suits, and their reasonable counsel fees to be audited and allowed by the finance committee of the common council and the counsel

to the corporation." The defendants then rested. The plaintiff hereupon produced in evidence the taxed bills of the costs referred to in the said resolutions, amounting to $2661,27, and also the certificate of the counsel of the corporation and of the finance committees referred to in the said resolution, whereby the counsel fees referred to in the said resolutions were audited at $300. The plaintiff also proved that the said warrant for $2661, 27, was endorsed by the said Peter A. Cowdrey on the day of the date thereof, to Joseph H. Cowdrey, who thereupon advanced to the said Peter A. Cowdrey the full amount of the said warrant, and that the said warrant for $300 was, on the day of the date thereof, endorsed by him to the said Oliver Wetmore and Augustus Wetmore, who thereupon advanced to the said Peter A. Cowdrey the full amount of the said last mentioned warrant. The plaintiff also proved that subsequently the said Joseph H. Cowdrey and the said O. and A. Wetmore, *for* value received by them from the said plaintiff, severally endorsed the said warrants to him, the said plaintiff. The plaintiff also proved that while the said several suits against the said supervisors were pending, and before the same were argued in the court for the correction of errors, and on or about the 26th of January, 1846, a preamble and resolution, of which the following is a copy, was passed by the said common council: "Whereas, Robert H. Morris, Elijah F. Purdy, Frederick R. Lee, Edward S. Innis, Moses G. Leonard, David Vandevoort, Abraham Hatfield, Cornelius B. Timpson and Samuel Bradhurst, acted in the conscientious discharge of their duties as supervisors of the city and county of New-York, in refusing to audit and allow the account of James Lynch, for his salary as associate judge of the court of general sessions, alleged to be due by virtue of the act for the organization of the criminal courts of the city of New-York, until such law should have been declared as a constitutional and valid law; and whereas, by the decision of the court for the correction of errors, in the case of Elijah F. Purdy against the people of the state of New-York, the said supervisors have been sustained in their opinion of the unconstitutionality of said law, therefore,

Halstead *v.* The Mayor, &c. of New-York.

Resolved, that the corporation of the city of New-York will defend the said supervisors in the further prosecution of the suits now pending against them for penalties for alleged violations of their duty, in declining to pay such salary as aforesaid, and do hereby direct the counsel of the corporation to aid in the argument thereof." And that pursuant to such resolution the counsel of the said corporation aided in the argument of the said causes, and the case and points were printed by the printer to the said corporation, and the expense thereof paid by them.

A verdict was thereupon taken for the plaintiff for $3138,83 damages, and six cents costs, subject to the opinion of the court upon a case.

*S. F. Cowdrey,* for the plaintiff.

*Willis Hall,* for the defendants.

*By the Court,* EDWARDS, J. This action is brought upon two warrants or drafts given by the defendants, and made payable to P. A. Cowdrey or order; one in the sum of $2661,27, the other in the sum of $300. The proof shows that the drafts, after having been duly endorsed, were received by the plaintiff, and there is no evidence that he had any other notice of their consideration than that which is given by the instruments themselves. No objection is made either to the form in which they are drawn, or to the manner in which they are signed; but it is contended that the defendants had no authority to give them.

The consideration of the draft for the larger amount consisted of taxable costs, which accrued in separate suits, brought in the name of the people of the state of New-York against eight of the supervisors of the city and county of New-York, to recover a penalty of $250, from each of them, for refusing to allow the account of one of the associate judges of the court of general sessions of the city and county of New-York, as they were required to do by the fourth section of the "act to enable the supervisors of the city and county of New-York

Halstead *v.* The Mayor, &c. of New-York.

to raise money by tax," passed May 26th, 1841. (*Laws of 1841, p.* 257.) The consideration of the other draft consisted of counsel fees which had accrued in the defence of the same suits. The suits were commenced in the month of September, 1841; and some years afterwards judgments were recovered against the defendants in each of them. On the 8th of May, 1847, and a few days before the drafts bear date, a resolution was passed by the common council, authorizing and directing the comptroller to pay the amounts of the several judgments, with the taxable costs and reasonable counsel fees. It was under this resolution that the drafts were drawn; and they appear to have been given for all the costs and fees which had accrued in the defence of the several suits.

The first question to be considered is, whether the defendants had the corporate right and authority to give the drafts for such a purpose.

The charter under which the defendants were incorporated gives them no express power in reference to suits, except that of suing and defending suits in their corporate name and capacity. The extent to which they may exercise that power is not expressly stated ; but, like every other incorporated body, they must have, by implication, and as a necessary incident to the powers expressly granted to them, the right to institute and defend suits for the purpose of protecting their own property and interests, and also for the purpose of protecting their corporate privileges and franchises. This is a right of self protection which must belong as well to artificial as to natural persons. But, as a general rule, it can only be exercised in cases where the corporation is a party to the suit. There may be cases, however, in which, as a matter of necessity, the defendants can exercise this right where they are not the actual parties to the record ; as in defence of titles acquired from them, and which they are bound to defend, or in defence of persons acting by their authority, and in their behalf. The reason why the defendants would have the right to defend a suit in either of the cases last supposed is, that although not the nominal parties, they would be the real parties in interest. In cases, however,

in which the defendants are neither the parties to the record, nor the real parties in interest, their corporate right to institute or defend suits must cease. In the case before us it appears that the costs and fees, for which the drafts in question were given, did not accrue in any suit brought against the defendants, or against any persons who acted under their authority and in their behalf. On the contrary, they accrued in suits against persons who acted on their own individual responsibility. The suits were brought, too, for the purpose of enforcing a claim which the defendants had no interest in resisting, and for which they were not liable. They were, in no respect whatever, the parties in interest. And although a question as to the constitutionality of the law under which the associate judges held their offices, might have arisen incidentally, the case is not altered.

At the time when the suits were commenced, the act under which the associate judges were appointed had been in force for upwards of a year, and they had acted as members of the court of general sessions during the greater part of that time. No proceedings had been instituted by the defendants for the purpose of showing that their corporate franchises had been abridged or impaired by the appointment of such judges. The constitutionality of the law under which they held their offices had thus been tacitly acquiesced in, and it does not appear that the defendants, in this respect, considered it any infringement of their corporate rights and privileges. If the supervisors chose to assume a different ground, and to disobey the law which required them to allow the accounts of the associate judges, they did so at their own peril, and they should bear the consequences. The act complained of, was done on their own responsibility, and the penalty for their misconduct is entirely personal.

But it was contended on the argument, that even if it should be held that the defendants had no right to give their drafts, for the consideration for which these were given, yet, that the plaintiff is entitled to recover as a *bona fide* holder without notice. It is not denied on the part of the defendants that the

drafts in question are, in their legal effect, negotiable bills of exchange, and that the plaintiff is a bona fide holder, with no other notice of their consideration than that which appears upon the face of the drafts; but it is contended that if they were given without corporate authority on the part of the defendants, they are void, even in the hands of a *bona fide* holder without notice.

It will be remembered that the defendants have no express power given to them by their charter to issue negotiable paper. It has, however, long been a settled doctrine in this state, that a corporation without any express power in its charter for that purpose, may make a negotiable promissory note or bill of exchange, when not prohibited by law from doing so; provided such note or bill is given for a debt contracted in the course of its proper legitimate business. (*Mott* v. *Hicks,* 1 *Cowen,* 113. *Barker* v. *Merchants' Fire Insurance Co.* 3 *Wend.* 94. *Attorney General* v. *Life and Fire Insurance Co.* 9 *Paige,* 477. *Moss* v. *Oakley,* 2 *Hill,* 675. *Kelly* v. *Mayor, &c. of Brooklyn,* 4 *id.* 263.) But, as far as we are aware, the question has never been decided whether a note or bill issued by such a corporation, not in the course of its proper legitimate business, is valid in the hands of a bona fide holder without notice. In the case of the *Attorney Gen.* v. *Life and Fire Ins. Co.* (9 *Paige,* 477,) in which the question arose, the chancellor declined to express any opinion, and placed his decision upon other grounds.

It was contended, on the argument, that the rule of the law merchant, which protects the bona fide holder of negotiable paper, without notice, was of universal application; and that, if the defendants had a right to issue negotiable paper, such paper must, *ex necessitate,* be subject to the same rules as the negotiable paper of an individual. This view seems plausible; but will it bear the test of examination? In the first place, the defendants have no general power, either express or implied, to issue negotiable paper. They have only a special and conditional implied power for that purpose; that is, it is necessary as a condition precedent to the validity of such paper that the debt which forms its consideration should be contracted in the

course of the proper legitimate business of the defendants. The act under which they were incorporated is declared to be a public act. Every person who takes their negotiable paper is bound to know the extent of their powers, and is presumed to receive it with a full knowledge that they have only a limited and conditional power to issue it. He is thus put on his inquiry, and takes it at his peril.

The circumstances, under which a bona fide holder without notice receives the negotiable paper of a natural person, or of a corporation having the general express power to issue negotiable paper, are very different. In both these instances the power to issue such paper is general and unconditional; and hence the rules which have been established by commercial policy, for the purpose of giving currency to mercantile paper, are applicable.

It results from the views which have been expressed, that the drafts in question, not having been issued by the defendants in their proper and legitimate business, are void in the hands of the plaintiff, although received by him without actual notice of their consideration.

Judgment must be entered for the defendants.

