## CLARK v. THE CITY OF DES MOINES.

1. Municipal corporations: AGENT'S POWER. Agents, officers, or even a city council of a municipal corporation, cannot bind the corporation by any act which transcends their lawful or legitimate powers. And this rule applies to the issue of negotiable as well as unnegotiable evidences of debt.

Clark v. The City of Des Moines.

2. —— NOTICE OF POWER. The duties and powers of the officers of a municipal corporation are prescribed by the statute, and every person dealing with them as such may know, and is charged with knowledge of the nature of these duties and the extent of these powers.

3. —— PLEA OF ULTRA VIRES. A corporation may set up a plea of *ultra vires*, or its own want of power under its charter or constituent statute to enter into a given contract, or to do a given act, in excess of its corporate power and authority.

4. **Contract:** NEGOTIABLE. Negotiability will not validate obligations which are not binding because of want of power to make them.

5. **Municipal corporations:** WARRANTS. Warrants drawn by the proper officers of a municipal corporation on the treasurer thereof, are not bills of exchange, but are, in legal effect, the promissory notes of the corporation.

6. —— POWERS, EXPRESSED AND IMPLIED. Municipal corporations have and can exercise only such powers as are expressly granted, and such incidental ones as are necessary to make these powers available, and are essential to effectuate the purposes of the corporation; and these powers are strictly construed.

7. —— POWER TO ISSUE NEGOTIABLE PAPER. When the officers of a city have no express power, to issue for current, ordinary debts, negotiable paper which shall be free from equities in the hands of purchasers, and it is not necessary as an incident to those granted, or to carry out the purposes and objects of the corporation, it cannot be held to exist by implication.

8. —— WARRANTS: NOTICE. The assignee of warrants drawn by the officers of a municipal corporation on the treasury thereof, is bound, at his peril, to ascertain the nature and extent of the powers of such officers and of such corporation.

9. —— UNAUTHORIZED REPRESENTATIONS. The want of corporate power or the want of authority in the municipal officers, cannot be supplied by their unauthorized action or representations.

10. **Usury:** WARRANTS. Warrants issued by a municipal corporation in payment of a judgment at the rate of one dollar in warrants for every seventy-five cents due on the judgment, are tainted with usury.

11. **Municipal corporation:** OVER-ALLOWANCE. It may be doubted whether a municipal corporation is bound by the action of its council in agreeing to pay a sum clearly, distinctly, and ascertainably *greater* than is legally due.

12. Des Moines: ROAD FUNDS. Under sections 23 and 27 of the Charter of the city of Des Moines (chap. 185, Laws of 1857), the care of the roads and streets within the limits of said city is a corporate matter; and all charges therefor are payable primarily out of the city treasury; and the liability of the corporation cannot be changed or varied by the form in which warrants are drawn or worded by municipal officers.

13. Municipal corporation: TOLL-BRIDGE. No municipal corporation can erect a toll-bridge and levy and collect tolls, unless authorized by the law of the State.

14. Des Moines: POWER TO ERECT BRIDGE. The city of Des Moines possessed no power, under the charter of 1857, to erect a toll-bridge, either by itself or jointly with an individual.

15. Municipal corporations: LOAN OF CREDIT. A municipal corporation has no power to lend its credit or make its accommodation paper for the benefit of citizens, to enable them to execute private enterprises.

16. Des Moines: SIDEWALKS. The building of sidewalks was, under the charter of 1857, a legitimate municipal object.

17. Municipal corporation: SCRIP. When a municipal corporation, acting under the Constitution of 1846, issued in payment of a *bona fide* indebtedness, scrip to circulate as money, after which the scrip was taken up by the issuance of ordinary warrants on the treasury thereof for the amount of the same, it was held, that the transaction could not be impeached by the corporation on the ground that the scrip was illegal and void.

18. Evidence: SIGNATURE TO WARRANTS. In an action against a municipal corporation, upon warrants, if the warrants are set out in the petition by copy, and their execution is not denied under oath, they may be admitted in evidence without proof of the genuineness of the signature, or of the authority to issue the same.

*Appeal from Polk District Court.*

FRIDAY, OCTOBER 6.

CITY WARRANTS: HOW FAR NEGOTIABLE: NATURE OF MUNICIPAL POWERS: ULTRA VIRES: CITY SCRIP: ORDERS ON DIFFERENT FUNDS: PROOF OF, &C. — This is an action against the city of Des Moines, based upon two hundred and twenty-two different city warrants or orders. The

plaintiff sues as assignee or holder.   He was not the payee of any of them.   A copy of one of the class of orders payable out of the "general fund," is as follows:

No. 783.                CITY WARRANT.                $8.00

DES MOINES, IOWA, October 21, 1862.

*To the Treasurer of the City of Des Moines:*

Pay *U. H. White* or bearer, eight dollars, out of any moneys in the general fund, not otherwise appropriated.

THOS. CAVANAUGH, *Mayor.*

Attest. H. W. KING, *Recorder.*

Indorsed: "Presented November 24th, 1862.   J. E. HULL, *City Treasurer.*"

Another set of warrants were in the same form as the one above set out, and payable to M. P. Turner, or bearer, "out of any moneys in the WEST SIDE ROAD FUND, not otherwise appropriated."

Other warrants were in the same form, issued to different persons, payable "out of any moneys in the EAST SIDE ROAD FUND, not otherwise appropriated."

Other warrants were in the same form as the one above copied, payable out of the general fund, with this written indorsement across the printed blank on which they were issued, viz.: "Issued for scrip, surrendered and bearing six per cent interest, from January 17, 1860.   H. W. KING, *Recorder.*   Presented, January 14, 1863.   J. E. HULL, *City Treasurer.*"

Various defenses were made, which, with the other questions arising upon this appeal, will be noticed in the opinion.   Judgment in the District Court, passed for the plaintiff, partly upon demurrer and partly upon the verdict of a jury.

The defendant is the appellant.

*Polk & Hubbell* for the appellant.

I. The court erred in overruling the defendant's motion to strike out certain counts in plaintiff's petition.

1st. They are not against the defendant in the same light. Some of the warrants in suit are drawn upon the East Side road fund; some on the West Side road fund; and some on the general fund. The city is only trustee for the East and West Side road funds. (Acts 1857, p. 281, § 27; Revision, § 2844.)

2d. A motion to strike out counts is the proper way to raise the question presented by the motion. (Rev. § 2846.)

II. The court erred in sustaining the demurrer of plaintiff to certain counts in defendant's answer, because

1st. The validity or invalidity of the warrants sued on depends on the ordinance of the city, and is a question of fact that cannot be raised by demurrer. (See *Garvin* v. *Wells*, 8 Iowa, 286.)

2d. Plaintiff is not an innocent holder of the warrants. They are payable out of a special fund, and are not negotiable. (Chitty on Bills, 137, and notes; Story on Prom. Notes, § 25, note 5; *Peddicord et al.* v. *Whitman et al.*, 9 Iowa, 471; *Rindskoff Bros. & Co.* v. *Barrett*, 11 Id., 172; *Worden* v. *Dodge*, 4 Denio, 159; *Irvine* v. *Lowry*, 14 Peters, 298.)

3d. If the warrants are negotiable, the power to issue them is given by a public statute of which plaintiff must take notice. See acts 1857, § 18.

Money can only be drawn from the treasury in the manner pointed out by law. No other mode can be adopted. (*School District* v. *Thomp*, 5 Minn., 280; *Head* v. *Providence Insurance Company*, 2 Cranch, 127; *Bank of Augusta* v. *Earl*, 13 Peters, 519, 587; *Farmers' Loan and Trust Company* v. *Carroll*, 5 Barb., 649; Ang. & Ames on Corp., § 111; *Hull & Argalls* v. *Marshall County*, 12 Iowa, 157; *Gould* v. *Town of Sterling*, 23 N. Y., 456.)

If warrants not issued under the direction of city council, they are void in the hands of every one. *Hull et al.* v. *Marshall County*, 2 Iowa, 162; *Reynolds* v. *Nichols*, 12 Id., 398, § 403; *Smead* v. *Indianapolis R. R. Company*, 11 Ind., 108, 109; *City of Aurora* v. *West*, 22 Id., 94, 95, and cases cited; *Utica Ins. Co.* v. *Scott*, 19 Johns., 6; Angell on Corp., § 269.

4th. The city council cannot issue warrants in payment of their debts, at less than their face. Warrants thus issued are void. Rev., § 3275.

5th. The contract to pay off a payment in warrants at seventy-five cents on the dollar, is usurious. *Bank of United States* v. *Owens*, 2 Peters, 527, and other cases cited in O'Neil's brief, in *Reynolds* v. *Nichols*, 12 Iowa, 400; *Borum* v. *Fouts*, 15 Ind., 54.

6th. The warrants set out in the 3d clause of the answer, were issued or loaned to one M. P. Turner, to aid in building a toll-bridge. The city council had no authority to issue warrants for that purpose, and they are void. See acts of 1857, § 14.

7th. Warrants payable out of a particular fund, are not due until such fund is shown to exist. See *Worden* v. *Dodge*, 4 Denio, 159.

III. The court erred in overruling the defendant's motion for new trial as to the several counts submitted to the jury.

1st. These warrants issued for city scrip (which was issued to circulate as money are in violation of law), and are therefore void. See city ordinance set out in answer; Old Const., art. 8; Code of 1851, ch. 147; *Reynolds* v. *Nichols et al.*, 12 Iowa, 398; *Craig* v. *State of Missouri*, 4 Peters, 436; *Skinner* v. *Deming*, 2 Iowa, 558.

If scrip is void, a warrant given therefor or in redemption thereof, is void also. *Craig* v. *State of Missouri*, *supra*; *Madison Insurance Company* v. *Forsyth*, 2 Ind., 483;

*Skinner et al.* v. *Deming*, 2 Id., 558; *Reynolds* v. *Nichols & Co.*, 12 Iowa, 398.

The warrants show upon their face that they were issued for scrip surrendered, and the plaintiff took them with notice of their illegality.

2d. It was error to permit plaintiff to read in evidence what purported to be city ordinances, without any proof of their passage. Acts of 1857, § 11; *Canby* v. *Iowa City*, 2 Iowa, 90.

IV. Those who deal with a corporation, the mode of whose action is limited, must take notice of the restriction in its charter, and see to it that the contracts on which they rely are entered into in the manner authorized in the charter. *Brady* v. *Mayor, &c.*, 2 Bosw., 173; 7 Abb. Pr., 234; 16 How. Pr., 432, affirmed in 20 N. Y. (6 Smith), 312; *Appleby* v. *Mayor, &c.*, 15 How. Pr., 428.

V. A municipal corporation is one of limited powers and if its officers assume to incur an obligation which it is not authorized to do, it is not made liable by the fact that it has received the consideration for the obligation. A corporation cannot, by subsequent ratification, make good an agent which it could not have directly empowered. *Hodyes* v. *City of Buffalo*, 2 Denio, 110; *Halstead* v. *Mayor of New York*, 3 Comst., 430, affirming 5 Barb, 218; *Boom* v. *City of Utica*, 2 Id., 104.

VI. A warrant drawn by the city on a special fund (East or West Side road fund), is not a charge against the whole city, nor is the city liable thereon, but only such special fund. *Lake et al.* v. *Trustees of the Village of Williamsburyh*, 4 Denio, 520; *McCullough* v. *The Mayor, &c., of Brooklyn*, 23 Wend., 488.

*Phillips & Phillips* for the appellee.

I. The demurrer to the defendant's answer was properly sustained: ..

1. All these orders are under seal of the defendant, and are negotiable. Rev., 1860, § 1794; 1 Pars. on Cont., 202; Des Moines Charter, 18–23; Rev., 1860, § 891; *Bank of Kentucky* v. *Sanders & Mer*, 3 A. K. Marsh., 184; *Creighton* v. *Gordon*, Mor., 41; Ed. B. & N., 60; 1 Pars. N. & B., 44.

2. Plaintiff was not a party to the orders, but is presumed to be a *bona fide* holder for value, and is protected. *Kelly* v. *Ford*, 4 Iowa, 141; *Early* v. *McCort*, 2 Wend., 414.

3. The want or illegality of consideration of a note transferred before due cannot be shown, in an action by a *bona fide* holder without notice, except where the note is declared void by statute. *Vallett et al.* v. *Parker*, 6 Wend., 620; *Ames* v. *Alleghany City*, 9 Am. Law Reg., 1861, 620; *Dyer* v. *Armstrong*, 2 Hall, 269; Pars. on Cont., 215.

4. A negotiable security by a corporation, which, upon its face appears to have been duly issued by such corporation, and in conformity with the provisions of its charter, is valid in the hands of a *bona fide* holder thereof, without notice. Although such security was in fact issued for a purpose not authorized by the charter, and in violation of the laws of the State where it was issued. *Stoney* v. *The American Life Insurance Company*, 11 Paige, 635; *Rockwell* v. *Charles*, 2 Hill, 499. The plaintiff was only put upon inquiry as to the power of the corporation to issue orders or paper of the kind sued upon. *Clapp* v. *Cedar County*, 5 Iowa, 57; *Hull & Argalls* v. *Marshall County*, 12 Id., 162; *Gould* v. *Town of Sterling*, 23 N. Y., 456.

5. That these orders were drawn upon the East and West Side road funds respectively, constitutes no defense in this action. Nor are they improperly joined with counts based on warrants on the general fund. City charter, approved January 28, 1857, §§ 3, 18, 19, 27; Revision, 1860, §§ 2844–3123.

6. An original good consideration is not destroyed by

the issuance of void paper, and when the void paper is taken up by the party who issued it, the original consideration continues, and is sufficient to support such legal paper given in place of the void paper. *Early* v. *Mahon*, 19 Johns., 147.

7. The city scrip was but an order on the treasurer of the corporation, in precisely the same words as those sued upon, and were not to be reissued by the corporation, and were not void under ch. 147, Code of 1851.

8. The defendant having issued this scrip, and with a full knowledge of all the facts attending its issuance, and the consideration received, instructed its officers to redeem the same, and issue these orders for it.

The court will not, in this action on such good paper, determine the validity or invalidity of the paper redeemed, but will enforce the new paper, which was so given in compromise and settlement of a doubtful claim against itself. *Russell* v. *Cook*, 3 Hill, N. Y., 504; *Bank of George-town* v. *Gearey*, 5 Peters, 114; 1 Pars. on Cont., 364; *Mullarky, adm'r*, v. *The Town of Cedar Falls, ante.*

9. As to all the orders not issued in redemption of scrip, the plaintiff need look no further than to see that the defendant had power to issue such paper, and that it was regular on its face. *Stoney* v. *American Life Ins. Co. et al.*, 11 Paige, 635; *Vallet et al.* v. *Parker*, 6 Wend., 620; *Hull & Argalls* v. *Marshall County*, 12 Iowa, 162.

10. A naked statement by counsel, or offer to show by a record an ultimate fact, without an offer of the specific record by which he claims such fact appears, and the embodiment of such evidence in his bill of exceptions will not enable the appellate court to say that he was prejudiced by excluding such offer. He must show affirmatively that he was prejudiced. This could only be done by exhibiting the record, and not by a naked offer. Rev., 1860, § 3111; *Brady* v. *Malone*, 4 Iowa, 146; *McKinney* v. *Hart-*

*man*, 3 Iowa, 344; *Parson* v. *Hedges*, 15 Iowa, 119; *Demoss* v. *Haycock*, Id., 149.

DILLON, J.—I. The plaintiff is the assignee of the orders or warrants in the suit. It is not alleged in the answer, nor 1. MUNICI- was it shown on the trial, that he was not a *bona* PAL CORPO- *fide* holder of these instruments for value, and RATIONS: agent's power. without notice of matters now pleaded, as defenses thereto. It is claimed by the plaintiff that the warrants being signed by the proper officers of the city, authenticated by its corporate seal, and negotiable in form, he, as the innocent holder thereof, stands, like a similar holder of ordinary mercantile paper, free from and unaffected by the equities and defenses which the city set up in bar of his recovery.

This view of the law was the one adopted by the court below, in its rulings prior to and upon the trial. Thus, after stating the law applicable to the warrants issued for " scrip surrendered " — as to which more will presently be said — the court charged the jury as follows: " As to all the other warrants, they are negotiable, and there is no evidence tending to show that they were issued without authority or without consideration; all evidence of this kind having been excluded, because it was not shown or offered to be shown that the plaintiff had knowledge of such defenses; and if you believe, from the evidence, that the warrants were issued by the defendant and that plaintiff is the owner thereof, you will find for him as to all such warrants." So the bill of exceptions recites, that " the defendant, on the trial, offered to show by the record of the proceedings of the city council, that all of said warrants were issued *without any authority from the said city council*, and without any vote of said council authorizing the same," but this evidence the court refused to receive, because the warrants were negotiable and there

was no offer to show that the plaintiff took them with notice of such defect or irregularity.

This view of the law is, we think, erroneous. If my name be signed to a promissory note by a person representing himself to be my agent, but "without any authority" from me, I am not bound; and I am no more bound because the obligation has been put in a negotiable form than if it has been put in a form not negotiable.

And the same rule must and does apply to paper purporting to be issued by the agents or officers of public or municipal corporations. The general principle of law is well known and definitely settled, that the agents, officers, or even city council of a municipal corporation, cannot bind the corporation when they transcend their lawful and legitimate powers.

This doctrine rests upon this reasonable ground. The body corporate is constituted of all of the inhabitants 2. —— notice of within the corporate limits. The inhabitants are power. the corporators. The officers of the corporation, including the legislative or governing body, are merely the public agents of the corporators. Their duties and their powers are prescribed by statute. Every one, therefore, may know the nature of these duties and the extent of these powers. These considerations, as well as the dangerous nature of the opposite doctrine, demonstrate the reasonableness and necessity of the rule; that the corporation is bound only when its agents, by whom, from the very necessities of its being, it must act, if it acts at all, keep within the limits of their authority. Not only so, 3. —— plea but such a corporation may successfully interpose of ultra vires. the plea of *ultra vires*, that is, set up as a defense its own want of power under its charter or constituent statute to enter into a given contract or to do a given act in violation or excess of its corporate power and authority. The cases asserting these principles are numerous and

uniform; some of the more important and striking ones need only be cited: *Mayor of Albany* v. *Cunliff* (city not liable for negligently building bridge under an *unconstitutional* statute) 2 Cómst. (N. Y.), 165, 1849; reversing *S. C.*, 2 Barb., 190; *Cuyler.* v. *Trustees of Rochester* (laying out street contrary to charter), 12 Wend., 165, 1834; *Hodges* v. *Buffalo* (4th July appropriation), 2 Denio, 110, 1846; *Halstead* v. *The Mayor*, 3 Comst., 430, 1850; *Martin* v. *The Mayor*, 1 Hill, 545; *Boone* v. *Utica*, 2 Barb., 104; *Cornell* v. *Guilford*, 1 Denio, 510; *Boyland* v. *The Mayor and Aldermen of New York*, 1 Sandf. (N. Y.), 27, 1847; *Dill* v. *Wareham*, 7 Metc., 438, 1844; *Vincent* v. *Nantucket*, 12 Cush., 103, 105, 1858, per MERRICK, J.; *Stetson* v. *Kempton*, 13 Mass., 272; *Parsons* v. *Inhabitants of Goshen*, 11 Pick., 396; *Wood* v. *Inhabitants of Lynn*, 1 Allen (Mass.), 108, 1861; *Spalding* v. *Lowell*, 23 Pick., 71; *Mitchell* v. *Rockland*, 45 Me., 496, 1858; *S. C.*, 41 Id., 363; *Anthony* v. *Adams*, 1 Metc. (Mass.), 284, 1840; *Western College* v. *Cleveland*, 12 Ohio, 375, 1861; *Commissioners* v. *Cox*, 6 Ind., 403, 1855; *The Inhabitants* v. *Weir*, 9 Id., 224, 1857; *Smead* v. *The Indianapolis, Pittsburgh and Cleveland Railroad Co.*, 11 Id., 104, 1858; *Brady* v. *The Mayor*, 20 N. Y. (6 Smith), 312; *Appleby* v. *The Mayor, &c.*, 15 How. Pr., 428; *Estep* v. *Keokuk County*, 18 Iowa, 199, and cases cited by COLE, J.; *Clark* v. *Polk County, infra.*

Negotiability will not validate obligations which are not binding, because of a *want of power* to issue them. *Gould* v. *Sterling* (action on loan bonds), 23 (N. Y.), 464; *S. C.*, 1 Am. Law Reg. (N. S.), 290; and note of Prof. Dwight thereon, a portion of whose remarks are so strikingly in point that we quote them: "It seems entirely clear" he observes (Id., p. 297), "that no representation by an agent can even establish the fact of agency. If a person, who is not in fact authorized, represents that he has power to execute a promissory note for another,

4. CONTRACT: negotiable.

the instrument, so far as the supposed principal is concerned, is utterly void.. The negotiability of the note will have no effect upon the question, as the inquiry turns upon the existence of the note itself. The term "negotiability" pre-supposes the existence of an instrument made by a person having *capacity or power* to contract in that particular manner." (*S. P. Hull & Argalls* v. *Marshall Co.*, 12 Iowa, 142, 162, per LOWE, J.) In *Starin* v. *Genoa*, and *Gould* v. *Sterling*, 23 N. Y., 452, 464, the plaintiffs were *bona fide* holders, for value, of negotiable bonds, and the Court of Appeals of New York held that they were bound to inquire into the power to issue them. "One who takes a negotiable note or bill of exchange purporting to be made by an agent," says Mr. Justice SELDEN (Id., 464), "is bound to inquire as to the power of the agent." Analyzing in the case at bar, the view of the court below, it will be found to involve three several distinct propositions: 1st. That the warrants in suit are *negotiable* paper. 2d. That the officers of the city (mayor and recorder) or at all events the city council, has power to *create* and *issue* negotiable paper, and,

5. MUNICIPAL CORPORATION: warrants.

3d. That warrants, like the ones in question, are valid in the hands of an innocent holder, even if issued without authority or without consideration. With reference to this, as well as other portions of the record, it is necessary to examine these propositions:

(*a.*) The orders in suit are not bills of exchange, as a bill of exchange proper involves the idea of at least two distinct parties, drawer and drawee. The instruments in suit are orders by the city on itself — mere directions to its treasurer to pay the amount to the bearer. In legal effect they are the promissory notes of the city. (*Miller* v. *Thomson*, 3 Man. & Gr., 576; followed, *Fairchild* v. *The Ogdensburgh, Clayton and Rome Railroad Company*, 15 N. Y., 337; *Bull* v. *Sims*, 23 Id., 570, 572; *Clark* v. *Polk*

*County, infra.*) And by usage and statute (Rev., ch. 73) they pass by delivery, and the holder, as the real owner, may bring suit upon them in his own name. (*Steel* v. *Davis County,* 2 G. Greene, 469; *Brown* v. *Johnson County,* 1 Id., 486; *Campbell* v. *Polk County,* 3 Iowa, 467.) The debtor corporation may give a written, acknowledgment of the debt. It may make this run to order or bearer without invalidating it; but it does not follow, as we shall show, that there is an implied power to invest these with all the qualities of commercial paper.

(*b.*) There is further involved, in the view of the District Court, the proposition that it is competent for the city officers (mayor and recorder) to issue its obligations in a *negotiable form,* and endow them with all of the attributes of negotiable, mercantile securities. Upon examining the charter under which these warrants were issued (Laws 1857, ch. 185, p. 281), no *express* power to issue promissory notes or other negotiable paper is conferred. If the power exists to make paper, which, in the hands of a *bona fide* holder, cuts off equities, it must be an *implied* power.

*6. —— power, express and implied.*

It is a familiar and elementary principle that municipal corporations have and can exercise such powers, and *such* only, as are expressly granted, and such incidental ones as are necessary to make those powers available and essential to effectuate the purposes of the corporation; and these powers are strictly construed. (2 Kent Com., 298; *Mayor* v. *Cunliff, supra,* and the authorities cited in connection therewith.)

It is held that banking and trading corporations have the implied or incidental power to make negotiable paper. (*McCullough* v. *Moss,* 5 Denio, 567; *Straus* v. *Eagle Insurance Company,* 5 Ohio, 59, 1855; *Mott* v. *Hicks,* 1 Cow., 513; *Attorney-General* v. *Life and Fire Insurance Company,* 9 Paige, 470; 2 Kent Com., 299; 1 Pars. N. and B., 165.)

And the same rule has in some cases been applied, without much consideration, by way of analogy, to municipal and public corporations; but not so as to cut off inquiry into the validity of the paper or just defenses. (*Kelley* v. *The Mayor, &c.,* 4 Hill, 263; see *Chemung Canal Bank* v. *Supervisors, &c.,* 5 Denio, 517; *Carne* v. *Brigham,* 39 Maine, 39; *Clarke* v. *School District,* 3 R. I., 199.)    To this doctrine, as applied to commercial corporations, we see no objection; but we do see many and serious objections to treating the ordinary warrants of counties and cities, as possessing all of the incidents and qualities of commercial paper.

These warrants are unlike bonds issued on time, negotiable in form, and for sale in the market, as, for example, those issued by towns, cities and counties to railroad companies, under express act of the legislature (for they cannot be issued without *express* legislative authorization), in payment for stock subscribed.    This class of securities are made and issued for the express purpose of raising money by their sale; and the attainment of this object would be embarrassed or defeated if they were subject to equities in the hands of *bona fide* purchasers.    They are, therefore, held to be negotiable, with all the incidents of negotiability. (*Clapp* v. *Cedar County,* 5 Iowa, 15; *Morris Canal Company* v. *Fisher,* 1 Stock. Ch., 667, 1855; *S. C.,* 3 Am. Law Reg. (O. S.), 423; *Gelpecke* v. *Dubuque,* 1 Wal. (U. S.), 175; *Craig* v. *Vicksburg,* 31 Miss., 216; *Jackson* v. *Railroad Company,* 2 Am. Law Reg. (N. S.), 585; *S. C.,* Id., 748, and note of Judge REDFIELD; *Chapin* v. *Vermont and Massachusetts Railroad Company,* 8 Gray, 575; *Clark* v. *Janesville,* 10 Wis., 136; *Maddox* v. *Graham,* 2 Metc. (Ky.), 56; *Gould* v. *Sterling, supra; White* v. *Railroad Company,* 21 How., 575; Id., 539; *Bank* v. *The New York and New Haven Railroad Company,* 3 Kern., 599; *S. C.,* 4 Duer, 480.)

But with warrants like those in suit, it is entirely differ-- ent. Under the charter of the city (§ 18), it is made " the duty of the city council to liquidate and settle all claims and demands against the city." And by the same section it is provided that no money shall be drawn from the city treasury " except by order under the authority of the city council."

The city council audit and allow claims and demands, and their action in this regard is to be entered of record. (Charter, § 3.) Upon a certified copy of these proceedings, the treasurer of the city would be authorized to pay the claimant.

But by usage, or perhaps under a by-law, orders like those before us are drawn upon the treasurer. This mode is adopted for convenience, and these instruments are not to be assimilated, in all respects, to ordinary commercial paper.

On this question the argument may be thus condensed :. There is no *express* authority to the officers of this city to issue negotiable paper which shall be free from equities in the hands of purchasers. And the existence of such a power is not necessary as an incident to those granted, or to carry out the purposes and objects of the corporation, and would be attended with abuse and fraught with danger. It should not, therefore, be held to exist as an *implied* power. (*Smith* v. *Cheshire*, 13 Gray [Mass.] 318, 1859; *Inhab. &c.* v. *Weir*, 9 Ind., 224, 1857; *Halstead* v. *The Mayor, &c.*, and other cases cited, *supra*.) Whether the *corporation defendant* could *specially confer* power upon its officers to bind it to negotiable paper, which should be free from equities, is a question which the record does not require to be decided.

. (c.) It is further involved in the view of the District Court, that an innocent holder of one of these warrants

7. —— power to issue nego- tiable paper: current or- dinary debts

Clark v. The City of Des Moines.

8. —— warrants: notice.

may recover thereon, though it be issued without consideration or without authority. The unsoundness of this view we have already pointed out. The warrants purport to be issued by the agents of the city. The plaintiff, in taking these warrants, was bound, at his peril, to ascertain the nature and extent of the power of these officers and of the city corporation. (*Delafield* v. *State of Illinois*, 2 Hill, 159, 174; 26 Wend., 192; *S. C.*, 8 Paige, 53; *Hodges* v. *Buffalo*, 2 Denio, 110; *Supervisors* v. *Bates*, 17 N. Y., 242; *Overseers* v. *Overseers of Pharsalia*, 15 Id., 341; *Butterfield* v. *Inhabitants of Melrose*, 6 Allen, 187; *Rossire* v. *City of Boston*, 4 Id., 57; *Zabriskie* v. *Cleveland, Columbus and Cincinnati R. R. Co.*, 23 How., 381, 398.)

By examination, he may find that these warrants cannot lawfully be issued without the order of the city council. This must be entered of record " on the journals of the city, which shall be open " (so the charter declares), " to the inspection and examination of every citizen." A warrant issued by the mayor and recorder without the previous order of the council, is void. They have no authority to do it, it would be substantially a forgery. A purchaser of such a warrant is bound at his peril, at least, to ascertain that the claim upon which it is founded has been liquidated and settled by the council. A representation by municipal officers, that this has been done (and the issue of such a warrant is in substance such a representation), will not be binding upon the corporation. Why? The answer is, because an agent can neither create nor enlarge his powers by his unauthorized representations. The law on this subject has of late years been much investigated, and will be found discussed and examined in a most critical, able and exhaustive manner, in the following important cases: *Mechanics' Bank* v. *New York & New Haven R. R. Co.* (Schuyler Frauds), 13 N. Y., 599, 1856; *Farmers' Bank* v. *Butchers' and Drovers' Bank* (where teller

Clark v. The City of Des Moines.

without *real* but with *apparent* power, certified negotiable check as good), 14 N. Y. 623; *S. C.*, 16 N. Y., 125; *Claflin* v. *The Farmers' and Citizens' Bank, &c.*, 25 N. Y., 293; *S. C.*, 2 Am. Law Reg. (N. S.), 92 and note; *Gould* v. *Sterling, supra;* the two last distinguished from the case in 14 N. Y., 623; *Griswold* v. *Havens*, 25 N. Y., 595, 1862; 26 N. Y., 505. Now without entering into these interesting discussions respecting the liabilities of principals *in certain cases*, for the acts of agents *apparently*, but not *really*, within the scope of their commission, we need only observe that if it be conceded that the mayor and recorder had the *apparent* power to issue warrants like the ones in suit, still if they did not *really* have this authority, their representations that they possessed it would not be the representations of a fact which from its nature (as in the case of the teller, who certified the checks), rested *peculiarly* within the knowledge of the agent. On the contrary, the charter and the journals of the corporation, open to public inspection, afford to every person the certain means of ascertaining the existence of the authority of these officers to issue the warrants.

We have been able, after a very thorough investigation, to find no case which holds that city and county warrants, like those before us, are freed from equities when in the hands of *bona fide* holders. Nor has the plaintiff's counsel called our attention to any such. On the other hand, we have found several cases in different States expressly holding that such orders were not commercial paper in the hands of an innocent holder, so as to exclude evidence of the legality of their issue or preclude defenses thereto. See *Halstead* v. *The Mayor, &c., of New York* (on audited city warrants like those in suit), 5 Barb., 218, 1849; *S. C.*, affirmed in Court of Appeals, but where the rights of a *bona fide* holder were not passed on, 3 Comst., 430, 1850; *People* v. *El Dorado County* (on audited county warrants dis-

tinctly holding that *bona fide* stood in shoes of payee), 11 Cal., 170, 1858; *S. P., Shurtevant* v. *Liberty* (town orders), 46 Maine, 457; *Smith* v. *Inhabitants of Cheshire*, 13 Gray (Mass.), 318, 1859; *Andover* v. *Grafton* (on note made by town), 7 N. H., 298, 1834; *Sanborn* v. *Deerfield*, 2 Id., 251, 254; *Dalrymple* v. *Whittingham*, 26 Vt. (4 Deane), 345; *Inhabitants* v. *Weir*, 9 Ind., 224, 1857; *School District* v. *Thompson*, 5 Minn., 280, 1861, approving 5 Barb., 218; *Clark* v. *Polk County, infra*, and cases cited by COLE, J.)

It must not be supposed, that certain cases recently decided by the Supreme Court of the United States have escaped attention. These cases were brought upon negotiable county and city *bonds*, and where there was *express* power to issue them. (*Commissioners of Knox County* v. *Aspinwall*, 21 How., 539, 544; approved and followed in *Bissell* v. *Jeffersonville*, 24 Id., 287, 1860; and *Gelpecke* v. *Dubuque*, 1 Wallace, 203.)

9. —
unauthor-
ized repre-
sentations.

In the latter case, speaking of the express power of the *City of Dubuque* to issue the bonds sued on, Judge SWAYNE, following *Knox Co.* v. *Aspinwall*, laid down this rule: "When a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached, for any infirmity, in the hands of such a holder than any commercial paper."

Upon this, without calling in question its correctness in the particular case in which it was used, we remark: 1. That this language was employed in a case where there was *express, specific power*, on the part of the city, to issue *negotiable bonds*, and in that respect is distinguishable from the case before us. 2. Experienced jurists, conscious of difficulty and danger attending it, hesitate to lay down general and unqualified rules, professing to embrace all

cases. Attempts of this character generally prove unsuc-
cessful. With due deference, the language above quoted
is susceptible of being taken to assert a doctrine, which,
without reasonable limitations, cannot be true as respects
public and municipal corporations. Suppose a city charter
expressly authorized the common council to issue negoti-
able securities for corporate debts, and that the mayor and
recorder, without an order of the council, fabricate — man-
ufacture such securities, and that they find their way into
the hands of innocent purchasers. It cannot be that Judge
SWAYNE means that "the *bona fide* holder has a right to
presume that they were issued under the circumstances.
which gave the requisite authority," and yet he says so.

The true rule is, that the want of corporate power, or the
want of authority in the municipal officers, cannot be sup-
plied by their unauthorized acts or representations. (*Gould*
v. *Town of Sterling, supra; Treadwell* v. *Comm'rs,* 11 Ohio,
183, commenting on and criticising *Knox Co.* v. *Aspin-
wall,* 21 How., 539.)

Any other doctrine nullifies the limitations and checks
contained in the charter for the protection of the corpor-
ators, and needlessly invests the public officers and agents
with the power successfully to "*Schuylerize*" our public
corporations, without limit and without remedy. Whether
warrants, like those in suit, issued by order of the council,
but which order was based upon the allowance of a claim
for which the city was not legally liable, would, in the
hands of a *bona fide* holder, be free from equities, is a ques-
tion of great difficulty, and which we' pass, because not
necessary to be now decided. It will be discussed and
decided in some of the authorities before referred to.

II. For answer to the third count in the petition, the
city says "that the warrant therein set out was executed
10. USURY: to Keyes and Crawford, the payees thereof, in satis-
warrants. faction of a judgment held and owned by them against the

city at the rate of one dollar in warrants for each seventy-five cents due on said judgment; that the city council thereby exceeded their authority, and the said warrant thus issued is illegal, usurious and void."

To this defense the court sustained the plaintiff's demurrer, and the defendant excepted and abided by his answer. The legal sufficiency of this defense is one of the questions presented in this appeal. For forbearance or " giving day of payment," a creditor under our statute of usury cannot lawfully receive or contract to receive more than ten per cent interest.

If I purposely and knowingly give my note for $100· payable on demand in satisfaction of a debt or. judgment for only $75, it is *prima facie*, and perhaps·conclusively, usurious. And so it is if the same be done by a corporation. Besides, it may well be doubted, whether the corporation is bound by the action of its council, in agreeeing to pay a sum clearly, distinctly and ascertainably greater than is legally due. Courts hold a stiff rein on corporate allowances; and auditing officers cannot, in general, if ever, allow and pay claims, however meritorious, if they are not legally chargeable. (*People* v. *Stout*, 23 Barb., 349 ; *People* v. *Lawrence*, 6 Hill, 244, 1843 ; Id., 463 ; *Chemung Canal Bank* v. *Supervisors*, 5 Denio, 517, 521, 1848 ; *Halstead* v. *The Mayor*, &c., 5 Barb., 218 ; *S. C.*, 3 Comst., 430 ; *Lake* v. *Trustees of Williamsburg*, 4 Denio, 520 ; *Supervisors* v. *Briggs*, 2 Id., 26 ; *S. C.*, 2 Hill, 135 ; *Augusta* v. *Leadbetter*, 16 Maine, 45 ; compare *Bean* v. *Jay*, 23 Id., 117, 121 ; and see also *Campbell* v. *Polk Co.*, 3 Iowa, 467.)

*The margin note reads:* 11 MUNICIPAL CORPORATIONS: over allowance.

The defense pleaded was good *pro tanto*, and the demurrer should have been overruled instead of sustained.

III. For answer to various other counts in the petition, the defendant pleads, in substance, that they are drawn " *on the West Side road fund*, and are to be paid out of

funds raised by taxation in the West Side road district, and not out of the general fund of said city;" that there has been, and is no money in the treasury belonging to said West Side road fund; that said warrants are improperly joined in this suit with warrants payable out of the general fund, and with those payable out of the *East Side* road fund. In further defense to certain warrants, the defendant alleges "that they were issued and loaned to M. P. Turner, the payee thereof, by the city council of Des Moines, to aid him (Turner) in constructing a toll-bridge across the Raccoon river, near its mouth, in the corporate limits of said city; that the city council had no authority (in law) to make such contract with Turner, wherefore said warrants are without consideration, and void."

To this defense the plaintiff demurred; the demurrer was sustained, and the defendant excepting, stood upon it. Other questions made on this appeal relate to the sufficiency of these defenses. The same defense, *i. e.*, improper joinder and want of funds, was pleaded to the warrants drawn upon the *East Side* road fund, together with the following special defense, viz. : "The said warrants were issued to one George Johnson, under and by virtue of a pretended contract by and between the street committee, on the East Side of Des Moines, and said Johnson, for building a sidewalk on the East Side, in said city; that the street committee had no authority to make such contract, and authorize the building of said walk; that the same was wholly without authority of law, and void, and the warrants issued thereunder without consideration, and void."

(*a.*) The plaintiff's demurrer to this answer was sustained, and defendant excepted and refused to answer over. This ruling is also assigned as error.

The questions here made may be considered together. It is claimed by the city that the warrants issued for

Clark v. The City of Des Moines.

road purposes are payable out of a "particular fund," and that the obligation to pay depends upon the existence and the sufficiency of the special fund; that being thus payable, they are not negotiable; that the city is only trustee for the East and West Side road funds, and the two classes of warrants cannot be sued upon in one and the same action.

If these warrants are not payable out of a particular fund, or, in other words, if the city is liable thereon, irrespective of the fact whether there is or is not a road fund on hand and in the treasury, this disposes of all the claims above stated as being made by the city.

By section 23 of the charter, the " city " (Des Moines) "is hereby constituted a road district." By section 27 it is provided: "That all property and road poll tax due from persons within the corporate limits, shall be paid into the city treasury; that there shall be two road districts, East and West Side, a street commissioner in each (appointed by the city council, sec. 4), under whose supervision all moneys collected for street and road purposes shall be expended; *Provided*, all moneys so collected shall be expended in the districts where they are levied or may fall due." Taking all of the provisions of the charter together, it is plain that the care of roads and streets is a corporate matter. The corporation has charge of all streets and roads, and it, and it alone, levies and collects the taxes to defray the expenses of making and keeping them in order. *All of these taxes go into its treasury.* All charges of this character are payable out of it. While there is to be a street commissioner on each side, he is subject to the control of the council. It is the council that determines the extent of expenditures or indebtedness for road purposes. The effect of the proviso in section 23, *supra*, is simply to prevent the council from expending, in the West Side, money and taxes collected for road purposes in the East Side, and *vice versa*. It

would hence result, that a "road account" should be kept by the officers of the city with each side : Each side to be credited with what has been received from it, and debited with what has been paid out on its account. There is nothing in the charter which favors the notion, that the liability of the city for road debts is conditioned upon the existence of road funds in the treasury. For road debts the city is as absolutely and unconditionally liable as for other debts. This liability cannot be controlled or varied by the form in which warrants may be drawn or worded by the municipal officers. (*County Commissioners* v. *Cox*, 6 Ind., 403, 1855, and authorities cited *infra.*)

We therefore hold, that the reference in the orders to the East Side and West Side road funds, is not to express the idea that the obligation to pay is dependent upon a fund *in esse*, at the time of demand or suit brought, but to enable the officers of the city to keep the account above suggested. This is a matter which does not concern creditors who look alone to the city. The officers of the city will have no difficulty, after judgment, in ascertaining, by an inspection of the warrants, how much to charge to the East Side and how much to the West Side road account or fund. This view is entirely consistent with all, and is directly sustained by many of the following authorities : *Kelly* v. *The Mayor*, &c., 4 Hill, 263 ; *Lake* v. *Trustee*, 4 Denio, 520, 1847 ; *Bull* v. *Sims*, 23 N. Y., 570 ; *Fairchild* v. *Ogdensburg, Clayton and Rome R. R. Co.*, 15 Id., 337 ; *Bank of Kentucky* v. *Saunders & Wier*, 3 A. K. Marsh., 184 ; *Commissioners* v. *Mason*, 9 Ind., 97 ; *Bayergul* v. *San Francisco*, 1 McAll. C. C. (Cal.), 175 ; *Campbell* v. *Polk Co.*, 3 Iowa, 467 ; *Pease* v. *Cornish*, 19 Me., 191 ; Edwards on Bills, 143, distinguishing (which is here applicable) "between bills drawn payable out of a particular fund and those that are simply *chargeable to a particular account.*" Chit. on Bills, 138 ; Story on Notes, §§ 25, 26.

It is also set up in bar of recovery on certain warrants payable to Turner, that they "were issued and *loaned* to aid him in constructing a toll-bridge across the Raccoon river in the corporate limits of the city." This is the substance of the answer in this respect. No person or corporation can erect a toll-bridge and levy and collect tolls, any more than a person or corporation can set up a ferry and levy and collect ferriage, unless this be authorized by the law of the State. (De Jure Maris, ch. II; Id., ch. III), where Sir Mathew Hale says, "No man can take a settled or constant toll even in his own private land for a common passage without the King's license," 4 Am. Law Reg., N. S., 513, and authorities there cited; *Prosser* v. *Wapello Co.*, 18 Iowa, 327; *Mullarky* v. *Cedar Falls, ante.*

*13. Munici-pal corpo-tions: toll-bridge.*

How Turner obtained authority to erect a toll-bridge within the corporate limits of the city, does not appear. The authority may, as in the Cedar Falls case just cited, antedate the corporate organization of the city. Whether under the statute it can be conferred by the county authorities within the limits, and upon the streets of the city, we need not stop to inquire. We will assume, on the averments, that Turner had the lawful power to erect the bridge. The city of Des Moines, under its charter, possessed no power to erect such a bridge for itself and by itself. (*Mullarky* v. *Cedar Falls, supra.*) Nor would it have the power to erect such a bridge, jointly with an individual, or to appropriate funds of the city in aid of such a private enterprise.

*14. Des Moines: power to erect bridge.*

The power of the city (charter, § 14), "to improve sidewalks, alleys and streets," "to make by-laws necessary and proper for the good regulation, safety and health of the city," would not authorize it to erect or aid in the erection of a toll-bridge by a loan of the corporate credit.

Turner's bridge was, it would appear, essentially an

individual enterprise. Let it be granted that, if erected, the bridge would be of advantage to the city by facilitat-ing the intercourse of citizens residing on different sides of the river. So the erection of an elevator or of a private market house might be beneficial to the city. But would this justify the city in issuing its warrants, and *loaning* them to a private individual, to aid him in erecting the elevator or private market house? No instance occurs to us, in which it would be competent for the city to loan its credit, or make its accommodation paper for the benefit of citizens, to enable them to execute private enterprises. (1 Parsons N. and B., 166; *Smead* v. *Indianapolis, Pittsburgh and Cleveland R. R. Co.*, 11 Ind., 105.)

*15. MUNICIPAL CORPORATIONS: loan of credit.*

To recognize such a right would be to break down, to a great extent, the checks and limitations on the power of the corporation — checks and limitations designed to protect and secure the inhabitants against the dangers of speculative and extra municipal projects. Though the averments are not very full and specific, the answer sets up that the warrants were *loaned* to Turner to aid him in building a toll-bridge for himself, and this, *prima facie* at least, is in excess of the corporate authority of the city. If the bridge was already erected on one of the streets of the city, if Turner, by law, had the right to exact tolls from the citizens, we will not say that the corporation would not be authorized to make, among other agreements that might be imagined, an arrangement whereby its citizens might pass free from tolls, and issue its warrants in payment for the privileges thus acquired. No such case is presented. We decide only that it cannot *loan* its credit or paper to aid an individual in constructing a toll-bridge, or to aid any other scheme essentially private. To prevent municipal corporations from engaging in banking and speculative enterprises, it is necessary, as this case shows, and as the current history of these bodies has demonstrated,

to keep the corporate wings clipped down to the legal standard. The court erred in sustaining the demurrer to this part of the answer.

(c) As to the warrants issued to Johnson, different considerations apply. Building sidewalks is, under the charter, a legitimate municipal object. Why the street committee had no authority in law to make such a contract, is not alleged. The ruling of the District Court on this point is affirmed.

16. DES MOINES: sidewalks.

IV. Certain of the warrants in suit purport on their face to have been issued "for city scrip surrendered." The city pleaded, that the scrip thus surrendered and which constituted the consideration of these warrants, was issued in violation of Art. 5 of the old Constitution and chap. 147 of the Code of 1851 — being intended to circulate as money.

17. MUNICIPAL CORPORATIONS: scrip.

To this the plaintiff responds, in substance: that the scrip itself was issued by the city, and used by it to redeem city warrants founded upon a valuable consideration. It appeared on the trial, that in 1857 the city council passed an ordinance reciting: "the present scarcity of money," "the impossibility of collecting taxes," "the impolicy of paying interest on loans," and the policy of issuing "for general circulation, convenient warrants" that tax payers might become enabled to pay their taxes, and providing for the issue of engraved city warrants in denominations of $1, $2, $3 and $5. In phraseology the warrants thus issued are like those now in suit. In appearance they are like bank bills, being on bank note paper with vignette, &c.

This scrip the treasurer was authorized to receive for taxes and to exchange for outstanding city warrants drawn in the usual form. The evidence does not show that any scrip was issued by the city, except to pay city indebtedness, or in exchange for their outstanding evidences of city

debt. The "scrip" was for a time popular, and, as invited by the city, its creditors received it in payment or in exchange for other evidences of municipal liability. Time wore on; the scrip would seem to have declined in popular favor, and not to have realized the high anticipations which its emission had inspired. Empirical, if not illegal, the remedy did not cure or relieve the corporate ills recited in the ordinance to exist. So in 1860, the council "changed its base." In 1857 it asked warrant holders to exchange them for scrip. They did so. In 1860, it authorized " the issue of city orders for the redemption of city scrip." Scrip holders conforming to the wishes of the city, then surrendered scrip and received warrants, such as those in suit, and such as those which they had given up to the city when they received the scrip.

On this part of the case the court charged that the scrip was illegal, and so far the defendant does not complain; but it further directed the jury, in substance, that if the city owed a valid and admitted debt, paid it in scrip, and then took up the scrip by issuing the warrants in question, he law regards this as a settlement of the transaction, and the warrants would be supported by a sufficient consideration, and be valid and binding. The jury so found the fact to be, and the evidence fully sustains the finding. Under the circumstances, this defense is entitled to no favor. Unless corporations are exempt from the ordinary principles of fair dealing that apply between man and man, this defense has no just foundation. It is the duty of courts not to allow the honest and just merits of a cause to be entangled in the meshes of sophistical reasoning, and rules purely technical. Not a member of the city council would, we are persuaded, make such a defense for himself. We have multiplied and constantly recurring examples of the fact, that under the shield of their corporate character men daily do acts which they would never

Clark v. The City of Des Moines.

do as individuals. Nor are these examples confined to this side of the Atlantic. " It is a familiar fact," says Mr. HERBERT SPENCER, " that the corporate conscience is ever inferior to the individual conscience ; that a body of men will commit, as a joint act, that which every individual of them would shrink from did he feel personally responsible." (Essays, No. VII, p. 261, Am. ed., 1865 ; and see Id., Essay V, for description, perhaps too highly colored, of the workings of English reformed municipal corporations.)

That the charge of the District Court was correct, even conceding the scrip to be illegal, we have no doubt. (See *Mullarky* v. *Cedar Falls*, June T., 1865 ; *Alleghany City* v. *McClinkan*, 14 Pa. 81, 1850 ; *Early* v. *Mahan*, 19 Johns., 147.)

V. The warrants being set out in the petition by copy, and not being denied under oath, it was not error for the court to admit them in evidence, without proof of the signature, or of the authority to issue the same. These warrants are in the nature of notes, and are within the provisions of the statute. (Acts 1862, ch. 28, p. 30.) The signatures thereto and seal of the corporation being thus admitted to be genuine, we are of the opinion that it is not necessary, in this State, that the plaintiff shall show, as a condition of being allowed to read the warrants in evidence, that these officers had the authority from the council to sign and issue them. It is not necessary to inquire, whether proof *aliunde* of the city treasurer's indorsement of the " presentation " of the warrants is necessary, or whether the indorsement of that fact by the treasurer is an "indorsement thereon," within the meaning of the statute last cited, because the fact of presentation was, by being alleged and not denied, admitted on the record. (See, however, *Clark* v. *Polk County, infra.*) The ruling of the District Court on these points is affirmed.

, Because the court below, on the trial, refused to allow the city to show that the warrants, respecting which a jury trial was had, were issued without authority, the judgment of that court on the verdict for $1,789.30 is reversed, and as to these warrants, and the warrants issued to Keyes and Crawford, and issued to Turner, a trial *de novo* is ordered.

.The judgment of the District Court in the plaintiff's favor, on demurrer, for $2,632 is affirmed, less the amount of the Keyes and Crawford and Turner warrants. The District Court will ascertain the amount thus to be deducted and credit the same on the judgment for $2,632, or set it aside and render a new judgment for the sum that remains after making the deduction above directed.