SAMUEL J. P. LADD vs. THE TOWN OF FRANKLIN.

A town voted to give a certain bounty to volunteers enlisting in the military service of the United States on the quota of the town, and authorized the selectmen to pay the bounty after the volunteers were mustered into the service.  *B* enlisted and was accepted and went into camp, but was taken sick and left the service before his regiment was mustered in, and was never accredited to the town.  After he enlisted, but before the regiment was mustered in, the selectmen at his request gave him a note for a part of his bounty, payable to him or bearer at a future day with interest, the consideration being expressed to be "value received in volunteer militia service."  Held that there could be no recovery upon the note by a purchaser of it in good faith for full value before due.

The selectmen exceeded their authority in giving the note.  That authority was special and limited.  They had no power to act in the matter as general agents of the town.

Persons dealing with a special agent do so at their own risk and are bound to inform themselves as to the extent of his authority.

This doctrine is especially reasonable and pertinent where the power is given by a public vote of a town, readily accessible, and where the claimant is a resident of the town.

The terms of the note here showed that it could have been given only under a special authority, which special authority could have been conferred only by a vote of the town.

If the giving of the note was to be regarded as an admission that *B* had been mustered into the service of the United States, yet the selectmen had no power to bind the town by such an admission.

A vote authorizing selectmen to pay money, means to pay in the ordinary way, by an order on the treasurer, and gives no authority to make a note.

A special agent cannot, without express authority from his principal, bind him by a negotiable promissory note.

The party purchasing the note was a resident of the town, with access to its records, and was also a brother-in-law of *B*, and cognizant of the general facts with regard to his military service, and had heard that the selectmen had questioned the liability of the town to pay the note.  Whether upon these facts the law would not regard him as taking the note in bad faith: *Quære*.

ASSUMPSIT, by the plaintiff as bearer, upon a note executed by the selectmen of the defendant town   brought to the Superior Court in New London county, and tried on the general issue with notice closed to the court, before *Carpenter, J.*

The note was as follows:—

"$165.00.   On demand, value received in nine months' volunteer militia service, we the undersigned, Selectmen of the town of Franklin, or our successors in office, promise to

pay Ezra B. Bailey, or bearer, One Hundred and Sixty-Five Dollars, with interest, on the 1st day of April, 1863, and annually thereafter. Franklin, Conn., Sept. 16, 1862.

EDWARD A. ALLYN, )
H. W. KINGSLEY, } Selectmen."
SOLOMON A. FRINK, )

On the trial it was proved and admitted that on the 26th day of July, 1862, the town of Franklin, at a meeting legally warned and held for the purpose, passed the following votes:

"*Voted,* That the sum of fifty dollars be paid out of the town treasury to such resident volunteers who shall be enlisted from this town before the first day of September, 1862, by any properly authorized recruiting officer; and said bounty is to be paid when the recruit is mustered into the service of the United States and accredited to this town.

"*Voted,* That the bounty offered by this town be paid to all enlisted since July 14th, 1862.

"*Voted,* That a committee of three be appointed to pay over to the volunteer or his order, the fifty dollars bounty voted by this town, when the foregoing conditions are complied with.

"*Voted,* That the selectmen of this town be said committee.

"*Voted,* That the selectmen be authorized to borrow money, if need be, to pay the bounty offered by the town."

It was also proved and admitted that on the 23d day of August, 1862, the town, at another meeting legally warned and held, passed the following votes:

"*Voted,* That the town of Franklin pay to each volunteer from this town, (who shall be a resident thereof,) who shall enlist prior to September 1st, 1862, for the term of nine months, the sum of one hundred and fifty dollars, in addition to the bounty of fifty dollars previously offered by this town to the three years volunteers.

"*Voted,* That the selectmen of this town be directed to pay the bounty offered by the town on and after they are mustered and sworn into the service of the United States.

"*Voted,* That the selectmen use all diligence and exert

themselves to the utmost to enlist the required number of men from the town, or a sufficient number to supply the number required from this town to make the quota called for by the President."

It was also proved that under the last three votes Ezra B. Bailey, a resident of the town, enlisted in Company B, of the 26th Regiment of Connecticut Volunteers, and went into camp with the regiment at Norwich on the 5th of September, 1862; that he was regularly examined, passed and accepted by the proper officer, as a member of the company, and that the oath provided by law was administered to him by Lieutenant Webb, an officer of the United States army, on the 25th of September, 1862; that the selectmen of the town, in pursuance of the last mentioned votes and the votes passed by the town on the 26th of July, 1862, paid to Bailey $35 in money, and for the balance of the bounties at his request executed and delivered to him the promissory note in question on the 26th of September, 1862; and that Bailey remained in camp with his company and regiment until the 5th of November, 1862, when he was taken sick with a typhoid fever and went to his home in Franklin, and never afterwards joined the regiment, and that by reason of sickness he was disabled for several months.

It was also proved that the regiment was accepted and mustered into the service of the United States on the 10th day of November, 1862, and soon thereafter left the state in the service of the government; but that Bailey, being sick and absent from the camp at that time, was not mustered in with the regiment, and was not at any time thereafter mustered into the service, his sickness being the only reason why he was not mustered in with the regiment.

It was proved also that the plaintiff purchased the note of Bailey and paid him therefor its full value, sometime between the 1st day of February, 1863, and the 1st day of October of the same year, (but at what time precisely it was not proved,) and that at the time of making the purchase he had knowledge of all the facts in relation to the military services of Bailey, (except that he had no knowledge that Bailey had not

been mustered into the service of the United States,) and had heard that the selectmen had questioned the liability of the town on the note; but it did not appear that the plaintiff had any actual knowledge that they had declined to pay the note until the 12th day of October, 1863, when the select-men published a notice cautioning all persons against taking the note in question, and stating that payment of the note had been stopped. It was admitted that the plaintiff was a brother-in-law of Bailey.

Except as above stated the plaintiff received the note in good faith.

It further appeared from the evidence that Bailey was never credited to or applied upon the quota of the town of Franklin; but that neither he nor the plaintiff had knowledge of that fact, unless such knowledge is to be inferred from the time and manner of his service as above stated.

Upon these facts the plaintiff claimed to recover of the defendants the amount of the note. The defendants claimed that their selectmen had no authority to execute and deliver the note to Bailey, unless and until he was mustered into the service of the United States, and that as he was never mustered into the service, and as the plaintiff purchased the note more than four months after it was executed and delivered to Bailey, and after he had heard that the selectmen questioned the liability of the defendants thereon, he was not entitled to recover. But the court overruled the claims of the defend-ants, and found the issue in favor of the plaintiff, and for him to recover of the defendants $236.72 damages and costs.

The defendants moved for a new trial.

*Hovey* and *Tenny*, in support of the motion.

1. When an agent acts under a special or express author-ity, whether written or oral, the party dealing with him is bound to know at his peril what the power of the agent is and to understand its legal effect, and if the agent exceed the boundary of his legal power, the act, as concerns the principal, is void. The selectmen of the town of Franklin were acting under a special authority and had no power ex-

cept such as was delegated to them by the votes recited in the motion. These votes give no authority to pay bounties to any volunteer until after he was mustered into the service of the United States, and as the note upon which this action is founded was executed and delivered to Bailey before he was mustered in, it is void. 2 Kent's Com., (9th ed.,) 835; 1 Parsons on Contracts, 41; *Thompson* v. *Stewart,* 3 Conn., 171; *Snow* v. *Perry,* 9 Pick., 539; *Munn* v. *Commission Co.,* 15 Johns., 44; *Beals* v. *Allen,* 18 id., 363; *Batty* v. *Carswell,* 2 id., 48; *Rossiter* v. *Rossiter,* 8 Wend., 494; 1 Am. Leading Cases, 535–576.

2. Express notice of any defect or infirmity in the title to a note, so as to let it in as a bar or defense against a holder for value, is not indispensable; but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction and to put the holder upon inquiry. The plaintiff purchased the note of Bailey more than four months after it was executed and delivered to Bailey. He knew all the circumstances connected with its history and had heard that the defendants' selectmen questioned the liability of the defendants thereon. These facts were of such a nature as to put a prudent man upon inquiry. With a knowledge of these facts he could not be said to have purchased the note in good faith, but took it at his peril. Story on Prom. Notes, § 197; *Hall* v. *Hale,* 8 Conn., 336; *Cone* v. *Baldwin,* 12 Pick., 545; *Towle* v. *Leavitt,* 3 Foster, 360; *Holbrook* v. *Mix,* 1 E. D. Smith, 154.

*Pratt* and *Bolles,* with whom was *Wait,* contra.

1. The bounty was to be paid by the selectmen when the recruit was mustered into the service of the United States and accredited to the town. The record finds that Bailey was regularly examined, passed and accepted by the proper officer as a member of company B, 26th Regt. Connecticut Volunteers, and that the oath provided by law was administered to him by Lieut. Webb, an officer of the United States army, on the 25th of September. Also that on the 26th day of September, 1862, the selectmen of the town paid Bailey the sum of

$35 in money, and for the balance of the bounties, at his request, gave him the note in suit. · This action of the selectmen creates the presumption that Bailey had complied with all the conditions on his part, else the money would not have been paid nor the note given. And the town is estopped from denying this, or claiming that the selectmen transcended their authority. If they exceeded their authority at all, it was only in paying Bailey before the day of muster. Their action does not show that Bailey was improperly enlisted; it completely sets aside any such inference.

2. If Bailey could have recovered on the note, Ladd certainly can who is a holder for value. Ladd had a right to presume that if the town had given the note, it was valid and would not be repudiated. He was a resident of the town at the time the votes were passed, and knew what they were, and had no reason to suppose that the committee had acted contrary to their authority. *Commissioners of Knox County* v. *Aspinwall*, 21 Howard, 539.

3. But the maker of a negotiable note cannot attack it in the possession of a third party having no knowledge of any infirmities attaching to it, if there is nothing to awaken suspicion. 3 Kent's Com., 78; 1 Parsons on Notes & Bills, 274, 279; *Swift* v. *Tyson,* 1 Pet., 1. And the presumption of law is that the holder took it in good faith. *Case* v. *Mechanics Banking Association*, 4 N. York, 166. The record finds that Ladd " had no knowledge but that Bailey had been duly mustered into the United States service." In respect to Ladd, therefore, there was a good consideration for the original note, and whether the selectmen had authority to give it to Bailey as soon as they did or not, does not affect his right to recover. For if Bailey was mustered into the United States service, there is no question whatever that whether he performed any military service or not he could recover. *Terrell* v. *Town of Colebrook*, 35 Conn., 188. But if there was no consideration for the note, yet that is no defence against Ladd, who took it, as the court substantially finds, without any notice of a want of consideration. 1 Parsons on Notes & Bills, 279, 188, note *g*. Besides, Ladd did not take the note till after the 10th

of November, 1862, at which time there was no infirmity attaching to it, even in the hands of Bailey.  And in respect to the refusal of the town to pay the note, Ladd had no such notice before purchase as would bind him.

4.   The note was not overdue at the time Ladd purchased it.   *Tomlinson Carriage Co.* v. *Kinsella*, 31 Conn., 268;   1 Parsons on Notes & Bills, 264, note *y*, 375.

PHELPS, J.   To determine this case let us briefly recur to the facts.   The defendant, on the 26th day of July, 1862, in legal meeting, voted to pay $50 *from its treasury* to such resident volunteers as should thereafter, before the 1st day of September following, enlist in the service of the United States, and also to those who had previously enlisted since the 14th day of the said July ; such bounty *to be paid when such recruits should be mustered into the United States service and accredited to the town* ; and the selectmen were appointed a committee to pay to the volunteer or his order such bounty when the foregoing conditions were complied with, and were authorized to borrow money if necessary to pay the same.

At another meeting duly warned and legally held on the 23d of August, 1862, it also voted to pay each resident volunteer from the town who should enlist for the term of nine months before the first day of said September, $150 in addition to the $50 previously offered, and the selectmen were directed to pay this bounty " on and after such volunteers were mustered into the service of the United States"; and they were required to use the utmost diligence in filling the quota then assigned to the town.

Pursuant to the votes passed at the last mentioned meeting Ezra B. Bailey, a resident of the town of Franklin, on or about the 5th of September, 1862, volunteered for nine months, and was examined, accepted and sworn on the 25th of that month, but in consequence of sickness *was never mustered into the United States service and never accredited to, or applied upon the quota of the town.*   The regiment in which he volunteered was duly mustered into service on the 10th of the subsequent November.   The note in suit

was dated on the 26th of September, and the consideration expressed on its face is for "nine months volunteer militia service." It is in form negotiable, but was made so by one of the selectmen after the others had signed it, and in their absence and without their knowledge or authority or that of the town, but the fact of such alteration was subsequently communicated by the person by whom it was made to the other selectmen, who made no objection. On the same day the selectmen paid Bailey $35 in money, which together with the note made the entire sum voted by the town at their meeting on the 23d of August. Between February first and October first 1863 the plaintiff purchased the note from Bailey, and paid him therefor its full value. The plaintiff then had knowledge of all the facts in relation to Bailey's service, excepting that he did not know he had not been duly mustered into the United States service. He had heard that the selectmen questioned the liability of the town to pay the note, but had no actual knowledge that they declined payment until he saw a published notice to that effect dated October 12th, 1863, which cautioned all persons against purchasing the note, and stated that payment of it had been stopped because the service by Bailey, specified as the consideration for the note, had not been performed. The court found that neither Bailey nor the plaintiff knew that the former had not been applied towards the quota of the town, unless such knowledge is properly inferable from the time and manner of Bailey's service; and that the plaintiff took the note in good faith excepting as the contrary is indicated by the other acts found. It is conceded that the plaintiff was a resident of the town of Franklin at the time of the passage of the votes, and had knowledge of them.

In view of the character of the votes, and of the facts found and admitted, and the law as applicable to them, we are to say whether the Superior Court properly found the issue in favor of the plaintiff.

It is claimed in support of the motion for a new trial, that the selectmen were the special agents of the town, and exceeded their authority in giving the note in suit. We think

a fair construction of the votes passed by the defendant justifies this claim. They were appointed and authorized to execute the single and specific purpose of filling the then pending quota of the town, and of paying the volunteers when they should be mustered into the service of the United States. So far as the authority to make payment was concerned it was carefully and expressly limited as to the time when it might be performed. The object of the defendant was to fill its quota, and its motive for procuring volunteer enlistments was to secure the application of the recruits upon it. This could not be done until they were actually mustered in, and hence the obvious purpose and propriety of the defendant's action in this respect. The circumstances are such as to exclude all possible doubt of its intention, even if it had not been unequivocally expressed in the language which it used. The fact that the selectmen so understood it is shown by their subsequent conduct in attempting to discharge the defendant from liability upon it. The notice which they published was in effect an admission that they had prematurely and unauthorizedly executed the note.

If Bailey had been actually mustered in he would have been accredited to the defendant and counted towards its quota, even though he had immediately deserted and never rendered any part of the service which he promised to perform. *Terrell* v. *Town of Colebrook*, 35 Conn., 188. The pivot of the whole matter was the being mustered into the service of the United States. If this had been done every requisite essential to the defendant would have been complied with, and not having been done, the consideration failed and the entire anterior proceedings were practically an utter nullity.

The duty of filling quotas by towns was special and extraordinary, and grew out of the exigencies created by the existence of the war. The discharge of this duty appertained to the towns in their corporate and aggregate capacity, and not to their selectmen as their ordinary general agents, except as they were specially directed or empowered. Even the towns themselves had no authority to pay bounties until it

was expressly conferred upon them by the General Assembly in 1862. It was a peculiar power, to be strictly exercised, and one which the selectmen could not legally perform except within the limits and according to the terms distinctly authorized by the towns. The defendant evidently understood this to be so, and acted intelligently upon that understanding. It was precise in the declaration of the terms of its authority, and careful not to hold out its agents as possessing any power except what was expressly contained in its public and recorded votes. The scope of the agency was restricted to the discharge of a particular duty, and, so far as the act of making payment was concerned, to a certain time; and it is difficult to conceive how language could have been more aptly employed to create a special, as distinguished from a general agency. Story on Agency, §§ 73, 126, 127, 128, and notes; Chitty on Contracts, 216, note; 2 Kent's Com., 620 to 622 and notes; *Thompson* v. *Stewart*, 3 Conn., 183; *Keyes* v. *Westford*, 17 Pick., 273; *Delafield* v. *State of Illinois*, 26 Wend., 192; *Beals* v. *Allen*, 18 Johns., 363.

That a special agent cannot bind his principal by any act in excess of his authority, and that persons dealing with such an agent do so at their own risk and peril, and are bound to examine and ascertain the precise extent of his authority, are propositions too long and well settled to admit of controversy, and their correctness is distinctly recognized in the foregoing and numerous other authorities; and this doctrine is especially reasonable and pertinent where the delegation of power is contained in public votes or other records or instruments readily accessible, and where the party asserting the claim against the defendant is one of its citizens and has full knowledge of its votes.

I am satisfied there is another reason why the action of the selectmen in giving the note was unwarranted and not binding on the defendant. The votes of the defendant simply direct its selectmen to pay the authorized bounties. This means payment in the usual and ordinary mode, through the medium of orders drawn on its treasurer. This is the only regular and legal method of liquidating claims against a

town, and is expressly recognized as such in our statutes. General Statutes, page 104, sec. 45. The vote of the defendant with reference to the bounty of $50, a part of which must necessarily have been included in the note, distinctly directs that payment shall be made from its treasury, and the selectmen are authorized if necessary to borrow money to meet the demand arising from the defendant's obligation to discharge the particular claim. The borrowing of money by a town through its agents necessarily implies payment of it into its treasury upon its receipt from the corporation or person from whom it is obtained; and there is nothing in the circumstances with reference to the remaining $150 of the bounty to justify the inference that the defendant expected or designed that the disbursement of the requisite funds to meet it should be made in any other manner than that prescribed by statute and ordinarily practiced by towns, which is by orders on their treasurer duly issued and regularly entered in a book kept for the purpose. A departure from this practice would tend to complication and confusion in the accounts of towns, which ought to be simply and intelligibly kept, and produce irregularities of a mischievous tendency.

The authorities in support of the point that a special agent cannot without express authority from his principal bind him by a negotiable promissory note, are nearly uniform and entirely decisive. *Savage* v. *Rix*, 9 N. Hamp., 263; *Denison* v. *Tyson*, 17 Verm., 550; *Taber* v. *Cannon*, 8 Met., 458; *Paige* v. *Stone*, 10 id., 160; *Webber* v. *Williams College*, 23 Pick., 302; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Smith* v. *Gibson*, 6 Blackf., 369; *Martin* v. *Walton*, 1 McCord, 16; *Davidson* v. *Stanley*, 2 Mann. & Gr., 721; *Emerson* v. *Providence Hat Mfg. Co.*, 12 Mass., 237.

And this principle may well be held to be particularly applicable to a case where the selectmen of a town, under a special power not embracing the execution of negotiable notes, after having signed a note not negotiable, without the knowledge of their principal so alter it as to render it negotiable.

2. It is also claimed that the plaintiff is not a *bona fide* indorsee of the note, and is therefore not entitled to recover.

That there was an entire failure of consideration between the defendant as maker and Bailey as payee of the note, cannot be questioned. The sole consideration of the note was the rendition of military service which was never performed. No action therefore could have been maintained by him upon it, and the question is, whether it was negotiated to and received by the plaintiff under such circumstances as to give him a legal right to collect it from the defendant.

The earlier rule on the subject vitiated a negotiable instrument in the hands of an indorsee, even though he paid value for it before maturity, if he took it with knowledge of such facts as were sufficient to reasonably excite suspicion in, and put upon inquiry, a person of ordinary prudence. *Hall* v. *Hale,* 8 Conn., 336 ; *Cone* v. *Baldwin,* 12 Pick., 545, and other cases.

The more modern and convenient doctrine is, that good faith, rather than diligence, is made the standard by which the holder's right is determined ; and diligence, or the want of it, are immaterial except so far as they legitimately tend to establish or rebut the claim of a *bonâ fide* possession of the paper. *Goodman* v. *Harvey,* 4 Adol. & Ell., 870 ; *Uther* v. *Rich,* 10 id , 784; *Foster* v. *Pearson,* 1 Cromp., Mees. & Rosc., 849 ; *Arbouin* v. *Anderson,* 1 Adol. & Ell., N. S., 498.

The finding of the court substantially is, that there was no bad faith connected with the plaintiff's reception of the note unless it is inferable from the facts found. From these facts, and from others which are conceded, it appears that the plaintiff resided in the town of Franklin and was a brother-in-law of Bailey, and that he knew what the terms of the votes passed by the defendant were. He also knew that the note was predicated exclusively on the consideration of nine months military service, no part of which had been or would be performed. He took it several months after it was delivered to Bailey, and after the fact of the failure of consideration was established, and when it appeared upon its face to have been materially altered ; and he had heard that the selectmen of the town questioned the liability of the town to pay it.

Upon the facts thus substantially found by the court I am entirely unable to resist the conviction that the plaintiff should be held, when he purchased the note, to have been fully cognizant of all the material circumstances connected with it, and to have reasonably apprehended that the integrity of the transaction would be challenged, and that an attempt to enforce its collection would be resisted on the grounds which have been interposed.

That Bailey acted in bad faith in disposing of a note which was worthless in his hands cannot well be doubted, and although the case finds that the plaintiff paid value for it, the circumstances are such as to excite the gravest suspicion that there was a collusive arrangement between Bailey and himself that he should pay full value for it, and in that way clothe the transaction with the appearance of good faith, when its real character was entirely otherwise.

An honest man with knowledge of the facts ought not to have taken it, and a prudent one would certainly have declined the risk. If the determination of this question was necessary for the purposes of the case, I think we might well hold that the immediate parties to the negotiation of the note should be left to such remedy or adjustment of the matter as between themselves, as should in their own view of the propriety of their conduct be best adapted to the accomplishment of that end.

A new trial should be granted.

Loomis, J. We prefer to rest the decision of this case upon the ordinary principles of agency, without discussing other questions suggested in the argument.

In order to recover, it must appear that the note in suit was the note of the town of Franklin. To make it the note of the town the selectmen who executed it must have had sufficient authority from the town. In giving the note the selectmen were not acting under any general powers conferred on them as selectmen, nor under any power to borrow money, but as special agents in this particular matter, pursuant to special instructions contained in the recorded votes of

the town; and by those votes it appears that authority was given to pay the bounty only when the soldier should be mustered into the United States service and accredited to the town; and as Bailey never was so mustered into service or accredited to the town, no payment of the bounty by promissory note, or otherwise, could be lawfully made. The note, therefore, cannot be the note of the town in the hands of Bailey, the immediate party to the transaction. But is it to be regarded as the note of the town in the hands of the plaintiff, who was a purchaser for value before the note became due? We think not. The plaintiff had no right to presume that the note in suit was given by the selectmen, either under their general powers as selectmen, (if their general powers were sufficient, which is doubtful,) or under the special power given by the vote of the town to borrow money to pay the bounties, because it appears upon the face of the note that it was upon consideration of "nine months volunteer militia service," and it was clear that the selectmen could have given the note only under some special authority, and, as such special authority could be given only by a recorded vote of the town, the plaintiff stands fully notified of such vote and of its terms. Such knowledge on the part of the plaintiff may not only be fairly inferred from the facts found by the court, but was distinctly admitted in the brief of the plaintiff's counsel.

The record also shows that the plaintiff knew that the selectmen had questioned the liability of the town on the note. If therefore the plaintiff, when he purchased the note, had full knowledge of the limitation of authority in the selectmen, contained in the votes of the town, and that the liability of the town had been called in question, upon what principle can he claim that the authority of the selectmen to bind the town should be extended in his favor beyond the terms of those votes? In certain exceptional cases the liability of the principal for the act of the agent may be extended in favor of innocent third parties beyond the authority actually given, but this applies only when the third party is ignorant that restrictions have been imposed on the agent,

and when there is an appearance of authority, for which the principal is responsible, which operates to mislead the party so dealing with the agent; but in the case now under consideration the votes of the town show the exact authority given, and they are so explicit that there is no room for enlargement by appearances.

It was claimed in the argument for the plaintiff, that the act of the selectmen in giving the note was an admission binding upon the town that the soldier, to whom the note was made payable, had been mustered into service, and the case of *Commissioners of Knox County* v. *Aspinwall*, 21 Howard, 539, was cited in support of this claim. A careful comparison of that case with this we think will show that they are not analogous in principle. The case cited, was a suit against the Commissioners of Knox County in the state of Indiana, to recover, in favor of innocent holders, the amount due upon certain coupons, originally attached to bonds issued by the board of commissioners, payable to the Ohio and Mississippi Railroad Company, or bearer, at the North River Bank, New York. An act of the legislature directed the board to subscribe to the stock of the railroad company, and to issue bonds for the payment of the subscriptions, in the event that, at an election to be held at a certain time in the county, pursuant to notice to be given by the sheriff of the county, a majority of the votes should be cast in favor of such subscription.

The defence was that the defendants, the board of commissioners, possessed no authority to execute the bonds or coupons in question, in consequence of an alleged omission, on the part of the sheriff, in respect to the notices to be given of the election at which a vote was to be taken for or against a subscription to the stock of the railroad company and the issue of bonds to pay for the same.

The chief inquiry was, whether the bonds and coupons in question were executed and put in circulation by competent and legal authority; and this question depended upon another, namely, who was to determine whether or not the election had been properly held, and a majority of the votes of the county cast in favor of the subscription?

The court held that it belonged to the board to determine. NELSON, J., in giving the opinion said: "The right of the board to act in an execution of the authority is placed on the fact that a majority of the votes had been cast in favor of the subscription; and to have acted without first ascertaining it would have been a clear violation of duty; and the ascertaining it was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the purpose. The board from its organization and general duties was fit and competent to be the depository of this trust." Much stress was evidently placed upon the fact that the board had by law very large general powers over the police and fiscal concerns of the county, as well as special power by law to subscribe for the stock and issue the bonds in question. NELSON, J., states the general powers given to the board by the statutes of Indiana as follows: "The auditor of the county is to act as its clerk, and the sheriff is to attend its meetings and execute its orders. It has a common seal, and copies of its proceedings, signed and sealed by the clerk, are evidence in courts of justice. It has power to dispose of the property of the county; to adjust accounts against it; to raise revenue; and examine accounts of disbursing officers; and an appeal lies from its decisions to the Circuit Court."

From the foregoing statement we see that the general powers of the board over the affairs of the county, given by the laws of Indiana, are much more extensive than the powers of selectmen over the affairs of a town in this state. The board is organized with the incidents and powers of a court. It is also a body corporate, and the suit in that case was brought directly against it, as maker of the bonds and coupons in suit. In addition to these general powers, we see that it was constituted, by the laws of Indiana, a special tribunal to subscribe for this stock, and to issue the bonds and offer them for sale. It is true that the board was called to act in behalf of the county, but it was also the agent of the law in this matter, and, having a duty imposed upon it by the legislature, the innocent holders of these negotiable bonds could well insist upon the presumption that it had not

violated its duty as prescribed by law, or at least that its neglect could not be shown in a collateral way.

Had the statutes of this state imposed a similar duty on the selectmen, relative to the issue and sale of negotiable notes, in the event of the muster of a soldier into service, a very different case would be presented for our decision. But our law imposed no duty whatever upon the selectmen relative to the matter, and the votes of the town only made them special agents for the purposes specified therein.

Another important distinction between the two cases is, that in the case cited the bonds were issued for the express purpose of selling them in the market, to raise money to aid the construction of a railroad, and a public credit for the bonds in the market was the thing sought; and in order to aid in this object, the bonds purported on their face to have been issued in every respect in compliance with the law that authorized their issue. But in the case now under consideration it was no part of the object or intent of the town to issue bonds or notes of any kind, or in any way to ask for credit with the public; but the intention was to have the money paid down to each soldier entitled to it. The selectmen were to deal directly with the soldier, who would know whether he had been mustered into service or not, and had they, in any case, erroneously assumed that a soldier had been mustered in, and had thereupon paid the bounty in the mode authorized, it would not have been possible to mislead third parties to their injury.

The act of the selectmen in giving the note undoubtedly implied that they believed that the soldier had been mustered into service, but this was not a fact that lay peculiarly within their knowledge; it was equally open and accessible to the plaintiff. Either or both might be mistaken, as both doubtless were in this instance; but in order to hold the town responsible for the mistake it must be shown that it did some act that led to the mistake, for a principal is never bound for an appearance of authority which the agent, merely by his own act, assumes. The agent alone is responsible for the appearance of the act, and the principal is holden only for the

authority he really gives, or for that which, by his own act, he appears to give.

In order to lay the foundation for the argument that the giving of the note by the selectmen is to be regarded as a conclusive admission on the part of the town that the soldier had been mustered in, it should at least appear that the town had authorized the act of giving such a note.

It does not avail to say that the selectmen were authorized to pay the bounty, and that the giving of this negotiable note was but another mode of payment, because it is an essentially different thing in its consequences to the town. It deprives the town of defences which it might have against the original claimant of the bounty, and brings in and creates liabilities to third parties that the town did not intend to deal with. And right here we think may be found the turning point of the case. If the town, for the sake of raising money to pay the bounties due to soldiers in the event of their muster into service, had authorized the issue by the selectmen of negotiable bonds or notes, with a view to their purchase by third parties, then the act of giving such a note or bond, in apparently full compliance with the authority given to the selectmen, might be considered an authorized stipulation that the soldier had been mustered in, so that the town could not dispute the fact in any suit in favor of a bonâ fide holder of such note or bond.

For the foregoing reasons we consider the judgment of the court erroneous, and advise a new trial.

In this opinion PARK, J. concurred. CARPENTER, J., having tried the case in the court below, did not sit.