RICH v. ERROL.

Selectmen have not authority, *ex officio,* without a vote of the town, to borrow money upon the credit of the town.

Selectmen, without being authorized by a vote of the town, borrowed money, representing that it was for the use of the town, and gave a note in the name of the town therefor. *Held,* that a *bona fide* indorsee of the note could not recover upon merely proving the borrowing of the money and the giving of the note by the selectmen.

ASSUMPSIT, by Joshua T. Rich against the town of Errol, to recover the amount due upon the following note :

。      "ERROL, N. H., May 15, 1865.

"For value received, the town of Errol promises to pay Hiram F. West, or bearer, five hundred dollars, in three years from date, with interest annually.

"*Signed*      W. W. BRAGG,  ⎫   *Selectmen of Errol,*
           JOHN D. PALMER, ⎭   *for the town of Errol.*"

Said note was given for a loan of money made by the payee. Said note was negotiated by W. W. Bragg, of Errol, who was, at the time said loan was made, one of the selectmen of said town, being duly elected to said office, and was chairman of the board, and acted .or professed to act in said capacity of selectman in negotiating said loan, and in receiving the money for which said note was given, as aforesaid. Palmer was also a duly elected member of the board of selectmen for said town at the time said loan was negotiated and note given, and signed said note as such selectman. The other member of said board was Charles L. Heywood. The money for which said note was given was paid by said West, the payee, to said Bragg, was received by him, and was by him credited to the town on the same day the note was given, on the same book upon which he credited other money to the town that was obtained by him as selectman from other loans in behalf of the town. At the time the money was obtained by said Bragg, he represented to West that he got the money for the use of the town of Errol ; and West made said loan upon the strength of such representations, and the note was taken for the same, as aforesaid, in good faith. Palmer, who signed said note, was not present at the time of the conversation about the loan between Bragg and West, but signed said note at the request of Bragg, on the same day of its date, understanding from Bragg that it was necessary that the money should be raised for the town, and with the intention of making a town note of the same. Heywood, the other selectman, was not consulted as to said loan, did not know of the same, or the giving of said note, until after it was given.

There was no vote of the town authorizing this specific loan, but, at a town meeting holden at Errol, August 27, 1864, it was voted to pay town bounties the same as the State of New Hampshire paid, and that the selectmen be authorized to raise the same by loan.   The amount of money necessary to pay these bounties was about thirty-six hundred dollars.   The town raised by loan from different persons, about the time of said vote, an amount equal to or more than said thirty-six hundred dollars.

Bragg also negotiated other loans for general town purposes, amounting to about five hundred dollars, which are credited upon his book, as aforesaid.   It does not appear as an affirmative fact that Bragg used the money for which said note was given, for the use of the town, nor does it appear affirmatively that he did not use said money for the benefit of the town.   The note in question was transferred by said West to one William R. Goodwin, in good faith, and for a valuable consideration, and was in the same way transferred by said Goodwin to the plaintiff before said note matured.   The plaintiff claims that Goodwin had a conversation with Heywood aforesaid, who was at that time chairman of the board of selectmen of Errol, as to said note, and that Heywood at that time told him the same was a good and valid note.   The plaintiff further contended, that, about the time said note was transferred to him, said Heywood and Thurston, at that time one of the selectmen of said town, told him that they thought said note was good ; both of which statements the defendants deny, and contend that said Heywood and Thurston did not know the facts as to said note until long after that time.

At a town meeting held in March, 1866, in making a verbal report of the liabilities of the town, said Bragg there stated that this note was among other notes due from the town ; but no action was taken upon said report.

The foregoing statements were submitted to the court, with an agreement that, upon a decision at the law term, the case might be discharged, and either party go to the jury if they so elected.

*Minot, Tappan & Mugridge,* for the plaintiff.

The general doctrine that there is no authority upon the part of towns to pledge their credit in cases outside the objects of their incorporation, and that selectmen, as agents of towns, have power to contract only in accordance with the authority conferred upon them by law, it it is no part of our purpose to deny : for, as stated by counsel for the defendants, in their brief, we understand the only question raised by them to be, Upon which party does the burden of proof rest, in an action founded upon a promissory note like that involved in this case ? and what is the plaintiff called upon to do in order to make out for himself such a *prima facie* case as will call upon the defendants to meet it with proof?   The agreed case shows that the note in question is proper as to form, and that it was duly signed by a majority of the

selectmen of Errol. We contend that, upon the production of the note in court, and an admission of its proper execution by the selectmen (who were acting as public officers in making it, and who clearly had the power to give notes in certain cases), the law will presume that they acted within the line of their duty, under proper authority and in conformity to law, and that the town will be bound by this presumption, and a *prima facie* case will be made out against them, which will be sufficient until it shall be overcome by evidence introduced by them in the case. We supposed the principle involved in the above position taken by us to be well settled law in this State, and think it is fully recognized as such in the case of *Shackford* v. *Newington*, 46 N. H. 415, and by the authorities cited by the chief justice, in the decision of that case, on pages 420, 421, and 422. As to the presumptions of power and authority, which the law raises with reference to the acts of public officers, we call the attention of the court to *Thornton* v. *Campton*, 18 N. H. 26, 27; *Cross* v. *Brown*, 41 N. H. 288, 289; *Hilliard* v. *Goold*, 34 N. H. 239; *Gassett* v. *Godfrey*, 26 N. H. 420; *Gordon* v. *Norris*, 29 N. H. 201; *Nottingham* v. *Barrington*, 6 N. H. 302; *Goodwin* v. *Milton*, 25 N. H. 471; *State* v. *Kean*, 10 N. H. 350; *Blossom* v. *Cannon*, 14 Mass. 176; *Proprietors* v. *Ransom*, 14 Mass. 147; *Wood* v. *Fitz*, 10 Martin 196; *Smith* v. *Hill*, 22 Barbour 656; *Mercer* v. *Doe*, 6 Ind. 80; *State* v. *Carter*, 6 Ind. 37; *Gilmore* v. *Holt*, 4 Pick. 258; *Davis* v. *State*, 17 Ala. 415; *Bank* v. *Dandridge*, 12 Wheaton 69.

The defendants contend that no presumptions of authority attach to the acts of the selectmen, and that no loan can be legal unless specific authority, by vote of the town, can be found for it. This rule applied, would compel, from the party to loan, an examination of the records of the town to ascertain whether all the preliminaries to the vote were in accordance with law, that the vote itself was legal and proper; and it seems that he could not safely repose upon a vote of the town authorizing a general loan to be raised by the selectmen (for there is that, in this case, at the meeting of August 27, 1864), but he must continue his researches into the affairs of the town, and, by a careful study of the treasurer's books, ascertain whether the amount of this loan had actually been raised; and having satisfactorily settled all these points in his favor, if he can obtain a sufficient guaranty from the selectmen that the money will not be misapplied by them, but will be "used for the benefit of the town," he can pass his money into the hands of the selectmen. We do not think this degree of diligence has been understood to have been requisite, in this State, upon the part of a person who was to loan money to a town, in order that his transaction might be legal; and we do not think the court will establish any such rule in this case; nor do we think it will hold that a person holding a note against a town, the execution of which is admitted, is called upon in the first instance to produce any more affirmative proof than the note itself, in order to entitle him to recover, unless sufficient answer be made thereto by the town. The presumption of authority upon the part of the officers of a town to do what they have under-

taken to do, should apply as a general doctrine and to all cases, but with especial force to the case of an innocent indorsee and *bona fide* holder of a note against a town, like this plaintiff. The rule that we contend for is the only one under which individuals can properly or safely deal with towns, or under which the agents of towns can, with any degree of comfort or convenience, deal with individuals in the matter of making or obtaining loans of money.

*Fletcher & Heywood*, for the defendants.

The important question in the case is this : In order to make a case for the plaintiff, is it enough for him to prove that the note upon which he claims to recover was made by a majority of the selectmen ? or, must he go further, and prove that the circumstances of the case were such as to authorize the selectmen to make a valid note of the town ? In this case, it is not pretended that the note was authorized by a vote of the town. The defendants, therefore, contend that the note is not valid, unless some circumstance is shown that would empower the selectmen to make it, or that it was given for a debt of the town, or that the money received came to the use of the town. The case of *Shackford* v. *Newington*, 46 N. H. 415, is no authority for the plaintiff's position. In that case, the plaintiff did prove the authority of the selectmen to make the note, by copies of the records of a meeting of the town, at which the authority was conferred in due form. After this proof was made, the court held that it would be presumed that the selectmen acted rightly under the authority conferred on them. This, we think, is quite a different thing from what it would be to presume that the selectmen had authority, when none whatever was shown. Our case is like that of a note signed by an agent. The authority of the agent must be proved, as well as that he made the note in the name of the principal. The case would be different, we admit, if it was part of the general business of selectmen to give notes in the name of the town. The rule is, that they have no such authority unless it is conferred by the vote of the town, and the vote must also contemplate a proper object. The exceptions to this rule are, that the selectmen may give the note of the town to pay a debt, and to buy liquors to supply the agency. But we think it has not been decided that they may give a note to *hire* money to pay a debt; though in our case we admit that if the money hired on the note in suit actually came to the use of the town, the defendants are liable.

Some of the cases cited in the plaintiff's brief seem to establish the doctrine that it will be presumed, till the contrary is proved, that a person did not intend to violate the law in a case where there was a way in which his conduct might be lawful; that officers did not omit to do their duty ; that road commissioners probably did their duty ; and the same presumption was made in favor of various other officers. We contend that these presumptions have no bearing whatever in the case under consideration.

We contend that, while it may be presumed that persons acting in an official capacity acted under and in accordance with their authority, yet, where a contract is made by an agent or by selectmen, as in this case, and the sole question is as to whether there was authority to do the act, there is no presumption in favor of the authority, but it must be proved.

\* SMITH, J.  It does not appear that the defendants have denied the signature of the note in the manner prescribed by the 44th rule of court. A failure to deny the signature operates as a conclusive admission of the authority of the selectmen.   *Great Falls Bank* v. *Farmington*, 41 N. H. 32 ;  *Williams* v. *Gilchrist*, 11 N. H. 535.   But, as the defendants may hereafter get relieved from the rule and be permitted to deny the sig-
·nature *(Aldrich* v. *Barron,* Coös, July term, 1870), we propose to consider the case as if the question of authority was open to them.

The note was given for money loaned to the selectmen, which they professed to borrow for the use of the town.   It does not appear that there was any vote of the town authorizing the selectmen to effect this loan.   The power conferred upon the selectmen by the vote of August 27, 1864, had been exhausted some eight months prior to the date of this note ; and, as it has not been contended that the selectmen repre-
sented to West that in borrowing of him they were acting under thaᴛ vote, it is unnecessary to consider what would have been the effect of such a representation.   See *Lowell Five Cent Savings Bank* v. *Winchester*, 8 Allen 109 ; HARRIS, J., in *Supervisors of Rensselaer* v. *Bates*, 17 N. Y. 242, p. 246.   It does not appear whether the money borrowed of West was used for the benefit of the town or not.   The town contend that the facts now admitted are insufficient to make out a *prima facie* case against them, but that the plaintiff must prove the additional fact that the money came to the use of the town.   To determine the right of the original payee to recover upon the state of facts here presented, it is necessary to decide whether selectmen have authority *ex officio*, without a vote of the town, to borrow money upon the credit of the town.

The Revised Statutes prescribe certain specific duties to be performed by selectmen, and also (Rev. Stats., ch. 34, sec. 2) the general duty to " manage all the prudential affairs of the town "—an expression found in the Provincial statute of 1679, 1680—the earliest to which we have access.   See vol. 8, N. H. Hist. Society Collections, p. 30.   Under these statutes, selectmen have not been regarded as the general agents of the town, " clothed with the general powers of the corporate body for which they act."   " They can only exercise such powers and perform such duties as are properly incident to the special and limited authori-
ty conferred on them by their office."   They are " empowered to do only such acts as are required to meet the exigencies of ordinary town business."   As to the general powers and duties of selectmen, see

———————————————————————

\* LADD, J., did not sit.

*Carlton* v. *Bath*, 22 N. H. 559, 564–558 ; *Smith* v. *Cheshire*, 13 Gray 318.   There is some business which can be transacted only by " the towns themselves, in their corporate capacity."   The power to borrow money is not conferred upon the selectmen by the express provisions of any statute.   Is this power an incident annexed by implication to the powers expressly conferred upon these officers?   In considering this question, it should be borne in mind that there are obvious differences, in origin, purpose, and general scope, between municipal corporations and private corporations, which may well justify courts in refusing to imply a legislative intention to delegate to selectmen of towns as full powers as those often exercised by directors of railroads or manufacturing corporations.

In determining the meaning of the ancient statutory phrase,—" to manage all the prudential affairs of the town,"—it is worthy of note that the nearer we get to the time of the framers of the early statutes, the more restricted is the view that we find taken of the powers of selectmen.   Thus, in *Sanborn* v. *Deerfield*, 2 N. H. 251, where it was held that a selectman, who himself advances funds to pay a debt due from the town, may maintain an action against the town for reimbursement, the power of selectmen under any circumstances to bind the town by a negotiable note was expressly left undecided, and was evidently regarded as doubtful.   In the earlier case of *Otis* v. *Barrington*, decided in the superior court, Strafford county, September term, 1804, the court explicitly denied the power of the selectmen to bind the town by a contract for the removal, from Maine to Barrington, of a pauper chargeable to Barrington.   A manuscript report, in the handwriting of one of the members of that court, shows that the plaintiff, who brought assumpsit against the town upon the contract made by the selectmen, was nonsuited,—the court saying that " towns were not bound by contracts made by selectmen.   They could use the town's money over which they have control in maintaining paupers, &c., but they cannot pledge the credit of the town, or bind them in any contract like the present.   If they could they might subject the town to any extent."

The theory of the framers of the statutes seems to have been that the towns should obtain their funds, for the most part, " periodically, by means of annual taxation ; " and, in case of exigencies, by the assessment of special taxes.   It is, however, " impossible, by any degree of care, to adjust their means to their wants so accurately but that exigencies will arise," rendering a resort to the credit of the corporation expedient.   No doubt has been suggested, in the present case, of the power of the town to raise money by loan ; but the question is, whether the selectmen, in their discretionary management of " the prudential affairs of the town," can *ex officio* exercise this power without special authority.   There are undoubtedly some instances in which the existence of this power in the selectmen might save the town some delay and expense in sudden emergencies. ' But the existence of this power cannot be said to be absolutely necessary.   The selectmen can at any time call a town-meeting upon fifteen days' notice, to see if the town

will give them special authority to borrow. If an execution is issued against the town, the statute gives the selectmen power to assess a tax sufficient to pay the same, and to collect the same within thirty days. Rev. Stats., ch. 198, sec. 3. (A reference to the earlier statute of Dec. 20, 1797, shows that the provision in sec. 3, ch. 198, Rev. Stats., —" that the selectmen shall pay such execution, or shall assess," &c.— contemplates payment only in case the selectmen have any money " in their hands, or in the town treasury." It does not impliedly authorize payment out of funds borrowed for the purpose.) It seems, therefore, that selectmen can, without much delay, apply to the town for power to borrow ; and that, in the emergency least likely to admit of delay, the statute authorizes them to assess a tax without a vote of the town authorizing the same.

· Selectmen have power, in some instances, to contract upon the credit of the town for property or labor requisite to the fulfilment of town duties ; as, for example, the repair of bridges, the relief of paupers, or the supply of liquors for the town agency. See *Andover* v. *Grafton,* 7 N. H. 298 ; *Great Falls Bank* v. *Farmington,* 41 N. H. 32. And power to contract the debt carries with it power to give a suitable acknowledgment of the indebtedness in the form of a promissory note—*same authorities.* But there is an essential difference between the right to contract for the direct accomplishment of a proper object, and the right to borrow money for the ostensible purpose of accomplishing the same end. If the selectmen contract to pay A one thousand dollars for repairing a bridge, the town credit thus pledged cannot easily be diverted to any illegitimate purpose. It may be said that the contract not only creates the fund, but secures its just appropriation." A cannot recover the contract price unless he does the work. But, if the selectmen may borrow one thousand dollars of B for the alleged purpose of fulfilling the contract with A, the town " will be liable to repay the loan to B, although not a cent may ever be applied to the object for which it was avowedly obtained," or in any manner used for the benefit of the town. " It may be borrowed to build a hospital, and expended to build a theatre." The lender would not be responsible for the use made of the money. The town may have to run the risk of misappropriation of funds in cases where they have conferred upon the selectmen special authority to borrow ; but the assumption of the risk in such a case is wholly the result of the voluntary action of the town. The question now under consideration is, whether the legislature have imposed a general risk of this nature upon all towns, irrespective of any other corporate action than the annual election of selectmen.

But it is not certain that this danger of the misappropriation of funds, borrowed when there was legitimate occasion to use money for town purposes, is the only danger, or the most serious liability to which towns would be exposed, if selectmen are held to have a general power to borrow money whenever needed for town purposes. The existence of the necessity would often be a fact peculiarly within the knowledge of the selectmen. If their representation as to the existence of such

necessity shall be held to be binding on the town, the town may be made liable for money borrowed when there was no occasion to borrow. There are some authorities which hold that, if a principal authorizes his agent to do an act upon the existence of a certain extrinsic fact, the existence of which rests peculiarly within the knowledge of the agent, the authority to do the act carries with it, as a necessary incident, power to make representations binding upon the principal as to the existence of the extrinsic fact. See cases collected in *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, pp. 61–74 ; also, 5 Am. Law Review 288, 289 ; 1 Parsons on Notes and Bills, 1st. ed., 108. The reasoning by which this result has been reached is somewhat as follows : the principal contemplates the agent's acting in his absence, " or there would be no object in appointing the agent ; " but the principal cannot have expected that the agent will be able to act effectively in the principal's absence, " if the party dealing with the agent is bound to recur to the principal for information " about a fact resting peculiarly within the knowledge of the agent and his principal ; " therefore it must be taken to follow, from the authority expressly conferred, that the principal holds out to the rest of the world that they may safely rely upon the agent's representations " as to the existence of the fact ; in short, by authorizing an act which necessarily involves a representation, the principal holds the agent out as worthy of credit in making the representation, and he is therefore estopped to deny the truth of that representation. It need not now be determined whether these positions are correct, or whether they are applicable in cases where power has been conferred by statute upon the officers of a municipal corporation.

But the fact that a plausible argument can be made in favor of subjecting towns to this liability, and that the question must be regarded as an open one, may not improperly be taken into account in considering the dangers to be apprehended in sustaining the selectmen's power to borrow. The risk to the town of the misappropriation of money, borrowed when there was legitimate occasion to use it for town purposes, is obviously limited, compared with the risk of misappropriation of money borrowed when there was no necessity for borrowing ; for, in the latter case, there is no definite limit to the amount which may be borrowed.

To concede to the selectmen the power to borrow without special authority from the town might be " entirely subversive of the principle which would limit their operations to legitimate objects." " Hence the distinction between such a power, and that of stipulating for a credit in a contract made for the direct advancement of some authorized corporate object." The power to borrow without special authority is not conferred upon the selectmen by express language in the statute. It is not necessary to the fulfilment of the duties of their office, but on the contrary, is dangerous in its consequences. We think it is not to be implied from the powers expressly granted, and therefore does not exist.

In this view, the borrowing of the money and the giving of the note

were unauthorized acts of the selectmen, not binding upon the town; and it follows, that the original payee could not recover on the note by merely proving that the note was executed by the selectmen for money which they professed to borrow for the use of the town. Does a *bona fide* indorsee for value stand any better in this respect ?

It has been held that, if a corporation is authorized to give notes for any purpose, a *bona fide* indorsee of the note of such corporation has a right to presume that it was issued for an authorized purpose, and it is no defence against him to show that the note was given for a purpose not authorized by the charter. See *Monument National Bank* v. *Globe Works*, 101 Mass. 57; SELDEN, J., in *Bissell* v. *Michigan Southern & Northern Indiana R. R.*, 22 N. Y. 258, pp. 289, 290; 5 Am. Law Review 282; 1 Parsons on Notes and Bills 165. But this doctrine is applicable only in cases where it appears that the corporation have in fact " assumed to make the contract." The very ground of this doctrine is, " that the corporation, by giving the note, has virtually represented that it was given for some legitimate purpose, and the indorsee could not be presumed to know the contrary." In other words, the doctrine applies only when the note " was in fact issued by the corporation." In the present case, the town of Errol did not " assume to make the contract " sued upon. The persons who assumed to pledge the town credit had no authority to do so. The note, therefore, was not made or issued by the town of Errol. The corporate power of the town to borrow money and give notes therefor is not disputed by the defendants' counsel. The defence raises a question of agency, not of " *ultra vires.*"

The negotiable form of the note does not aid the plaintiff. It cannot relieve him from the necessity of proving that the selectmen had authority to execute it in behalf of the town, " for it is to be kept in mind, that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued." MILLER, J., in *The Floyd Acceptances*, 7 Wallace 666, p. 676.

If the assumed agents had no authority, the note is not the note of the principal at all, and its form is immaterial. " An instrument must at least exist before it can be negotiable." See Professor Dwight, in 1 Am. Law Register, N. S., 301; 1 Parsons on Notes & Bills, 1st ed., 277; *Clark* v. *City of Des Moines*, 19 Iowa 199; *same case*, 6 Am. Law Register, N. S., 145. "A forged note derives no validity from being passed to an innocent holder." " The rights of innocent purchasers" are not superior to " the rights of innocent tax-payers." In our own reports, these principles have been distinctly recognized as applicable to town notes. In *Andover* v. *Grafton*, 7 N. H. 298, pp. 302, 303, PARKER, J., said,—" The authority of the selectmen to bind the town by contract being a limited authority, it will be necessary for the holder to prove, notwithstanding it purports to be for value, that it was given by the selectmen acting within the scope of their authority, as he cannot otherwise show them agents for the purpose. * * * * * * And an indorsee, who should take such note, even before due, would receive

it subject to a liability to make the same proof respecting the authority of the selectmen to execute it in that particular case, as would be required of the promisee." In *Great Falls Bank* v. *Farmington*, 41 N. H. 32, pp. 42, 44, FOWLER, J., said,—" The note was signed by the selectmen for the defendant town, and therefore it was incumbent on the plaintiffs [*bona fide* indorsees before maturity] to inquire whether it was signed by them within the scope of their authority, and given for a debt for which the credit of the town could properly be pledged by them. * * * * The fact that the note is executed by an agent is apparent upon its face ; of course the purchaser has notice, and .buys the note at the risk of the authority of the agent to give it " * * * * See, also, EDWARDS, J., in *Halstead* v. *Mayor of New York*, 5 Barbour 218, pp. 224, 225 ; Dillon on Municipal Corporations, secs. 406, 372 ; *School District* v. *Thompson*, 5 Minnesota 280 ; *Goodnow* v. *Commissioners*, 11 Minnesota 31 ; *Clark* v. *Polk County*, 19 Iowa 248 ; *People* v. *County*, 11 California 170 ; *Baltimore* v. *Eschbach*, 18 Maryland 276, 282 ; MILLER, J., in *State* v. *Kirkley*, 29 Maryland 85, p. 111. If the plaintiff had made reasonable inquiry, he could have ascertained for what this note was given. The origin of the note was not solely within the knowledge of the selectmen. The original payee knew that it was given for borrowed money. It was not enough for the plaintiff to learn that the selectmen " thought the note was good." He should have ascertained the grounds for that opinion, and learned whether the note was given for a matter for which the credit of the town "could properly be pledged by the selectmen." If the selectmen, who signed the .note, had not power to give the note, their successors had not power to ratify it. The town may ratify an unauthorized act of their agents, if it was within the corporate power to have authorized the doing of the act in the first instance ; but the selectmen cannot *ex officio* ratify a contract which the selectmen had no power to make originally. See Dillon on Municipal Corporations, secs. 385, 387 ; *Marsh* v. *Fulton County*, 10 Wallace 676. As it does not appear that the selectmen made any false representations to the plaintiff as to the origin of the note, it is unnecessary to consider what would have been the effect of such representations.

Attention has been called to a class of cases decided in the supreme court of the United States within a comparatively recent period.

If the ground we have taken in this opinion seems in conflict with some of the language used by various judges of the supreme court of the United States, still, it is not necessarily inconsistent with the result actually reached in most of those cases.

The general features of many of those cases are much alike, and may be summed up briefly. Power was expressly conferred by statute upon some board of public officers (*e. g.*, the commissioners of a county or the common council of a city) to issue. negotiable municipal bonds in aid of internal improvements, upon the vote or petition of a certain proportion of the legal voters. No tribunal was expressly invested by the statute with the power of determining whether the prerequisites to the

issue had been complied with.  The board of officers, representing that
the preliminaries had been complied with, issued the bonds for the ex-
press purpose of selling them in the market to *bona fide* purchasers, and
the bonds were so sold with the full knowledge of the municipality,
without objection from any quarter.  It is probable that, in every in-
stance, the municipalities, or the inhabitants, received benefit from the
internal improvements carried on with the funds realized from the sale
of the bonds.  (In at least one instance, the municipality received
stock in exchange for the bonds, and never offered to return it.  *Super-
visors* v. *Schenck*, 5 Wallace 772;—see, also, *Moran* v. *Commissioners of
Miami County*, 2 Black 722.)

After a considerable time had elapsed, the municipalities, being
sued on the bonds, claimed, for the first time, that the issue was un-
authorized.  This defence was overruled.  One of the prominent rea-
sons for the decisions in these cases was, that the power of definitively
determining whether the requisite assent of the voters had been
obtained was impliedly lodged by the statute with the boards of officers
by whom the bonds were to be issued, and that the decisions of such
boards were final.  It was thought that the opposite construction of
the statute might "render the law altogether inoperative," inasmuch
as " capitalists could not be expected to accept such paper, and advance
money for it, unless the authority to issue it was put beyond dispute."
See CLIFFORD, J., in *Bissell* v. *Jeffersonville*, 24 Howard 287, p. 298 ;
*Commissioners of Knox County* v. *Aspinwall*, 21 Howard 539.   The
court hold that a corporation " cannot, by their representations or si-
lence, involve others in onerous engagements, and then defeat the calcu-
lations and claims their own conduct had superinduced."   CAMPBELL,
J., in *Zabriskie* v. *Cleveland &c. R. R. Co.*, 23 Howard 381, pp. 400, 401.
If a municipality know that instruments purporting to be their bonds
are being issued in negotiable form, to be offered for sale to *bona fide*
purchasers, who will rely upon the representation that the prerequisites
to the issue have been complied with, it may be that the negotiable form
of the bonds is a circumstance proper to be weighed in determining
whether the corporation are not estopped, by their silence during the is-
sue and sale of the bonds, from denying their validity in the hands of
*bona fide* holders.   See *Society for Savings* v. *City of New London*, 29
Conn. 174.    There are obvious distinctions between the class of cases
just referred to and the case at bar.    See Dillon on Municipal Corpo-
rations, secs. 419, 426 ; *Clark* v. *Des Moines*, 19 Iowa 199 ; GHOLSON, J.,
in *Treadwell* v. *Commissioners*, 11 Ohio St. 183, p. 191 ; *Ladd* v.
*Franklin*, 37 Conn. 53.   Here is no statute conferring on the selectmen
authority to borrow money.   The borrowing does not appear to have
been made known to the town until nearly a year after ; and, as it has
not been suggested that either the plaintiff or Goodwin was induced
to change his position in reference to the note by what transpired at
the town-meeting, there is no question of estoppel to be considered.
The recent decision of the supreme court of the United States, in the
case of *The Floyd Acceptances*, 7 Wallace 666, seems in accord with

the view taken in the present opinion. In that case, the doctrine is distinctly enunciated that the purchaser of negotiable paper purporting to bind the government must, at his peril, see that the officer signing it had authority to bind the government—MILLER, J., p. 676. This decision is sustained by *Marsh* v. *Fulton County*, 10 Wallace 676 ;—see, also, *Aspinwall* v. *County of Daviess*, 22 Howard 364.

The plaintiff contends that there is a general " presumption of authority upon the part of the officers of a town to do what they have undertaken to do." But, in the present case, there is no room for any presumption, in view of the admitted facts. It is undisputed that the note was given for money borrowed without special authority from the town. If the selectmen have not power, *ex officio*, to borrow, it follows that the act was unauthorized. Nor is there any presumption that the money thus borrowed came to the use of the town. When all that appears of the acts of the selectmen is legal, there may sometimes be a presumption in favor of the due performance of other duties legally incumbent upon them in relation to the same subject-matter. But the fact that the selectmen have, without legal authority, borrowed money upon the credit of the town, does not warrant the presumption that they applied the money to the use of the town.

The town of Errol do not dispute their liability, in case the money hired on this note came to the use of the town. Our conclusion is, that the plaintiff must show that the money loaned came to the use of the town, or that the note was in some other manner ratified by the town.

We are not inclined to consider at this time the competency or weight of any circumstances disclosed in the case, as evidence upon the question of the application of the money, or upon the question of ratification. It is understood that the plaintiff will elect to try the questions of fact by a jury ; and the competency and weight of any evidence on these points have not been discussed in the arguments on either side.

*Case discharged.*