## WILLIAM G. MACK vs. OLIVER W. STARR.

Third Judicial District, New Haven, June Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Evidence that an indorsee of a note bought it for value " according to the customs and usages of commercial transactions," is obviously affirmative evidence that he purchased it without notice of any defect in the title.

In the present case the important question was whether the plaintiff, to whom the notes in suit had been indorsed by the payee, was a *bona fide* holder for value, without knowledge or notice of the fraud by which they had been obtained. He had a verdict and the defendant appealed. In his charge, the trial judge instructed the jury that if the plaintiff, when he bought the notes, had notice of the fraud, " or had knowledge of such facts that his action in taking the notes amounted to bad faith," he could not recover. *Held* that this instruction was not only correct, but was also in accord with the defendant's own requests to charge, which the trial court adopted and read to the jury.

Argued June 6th—decided July 14th, 1905.

ACTION by the indorsee against the maker to recover the amount of two promissory notes, brought to the Superior Court in Fairfield County and tried to the jury before *Reed, J.;* verdict and judgment for the plaintiff for $3,300, and appeal by the defendant. *No error.*

*Eugene C. Dempsey* and *Aaron T. Bates*, for the appellant (defendant).

*Donald T. Warner* and *Howard F. Landon*, for the appellee (plaintiff).

TORRANCE, C. J. The two notes in suit were each for the sum of $1,000, each was dated December 20th, 1893, and each was made payable to H. P. Reynolds or bearer; one in two and one half and the other in three and one half years from date, at the Danbury National Bank in this State. The notes were each signed by the defendant and some twenty-nine others as makers, and in the notes the promise to pay was in effect a joint and several one.

The plaintiff claimed and offered evidence to prove, in substance, that the defendant had signed said notes as maker, and that they had been indorsed to the plaintiff by Reynolds, the payee in the notes; that the plaintiff became the holder of the notes before they were due, for value, in due course; that the notes were complete and regular on their face; and that the plaintiff took them without notice or knowledge that they had been obtained from the makers by fraud, or that there was any infirmity in the notes, or any defect in Reynolds' title.

The defendant claimed and offered evidence to prove that the notes were obtained by Reynolds from the makers by the gross fraud of Reynolds and others, as set forth in the answer, and about this part of the case there was little or no dispute between the parties at the close of the evidence. The defendant also offered evidence to prove such facts as he claimed went to show that the plaintiff was not the *bona fide* holder of the notes for value, but had taken them without paying full value, and with notice and knowledge of the fraud and of Reynold's defective title to the notes; and the question whether the plaintiff was the *bona fide* holder of the notes for value without such notice or knowledge, was the one important contested question in the case.

The defendant, in his appeal from the action of the court

in denying his motion to set aside the verdict, earnestly contends that upon this important issue in the case the verdict is against the weight of evidence; but in this view of the matter we cannot agree with him. Upon a careful review of that evidence in the light of our decisions upon appeals of this nature, we are very clearly of the opinion that the trial court did not err in denying the motion to set aside the verdict.

In the other appeal in this case there are six assignments of error, all relating to the charge to the jury. The first relates to one of the plaintiff's requests to charge which reads as follows: "Proof that the holder bought these notes for value according to the customs and usages of commercial transactions, is affirmative evidence that he purchased them without notice of any defect in the title." This request the court read to the jury and told them it was "correct." The request states a mere truism. To purchase a negotiable note "according to the customs and usages of commercial transactions," is of course to purchase it without notice of any defect in the title; and proof of such a purchase is of course affirmative evidence that it was made without such notice. In view of the entire charge given, the reading of this request was as harmless as it was needless and useless.

The second and third assignments relate to the following parts of the charge: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. The earlier rule vitiated a negotiable instrument, in the hands of an indorsee, even though he paid value for it before maturity, if he took it with knowledge of such facts as were reasonably sufficient to excite suspicion in, and put upon inquiry, a person of ordinary prudence; the law now is, however, that good faith rather than diligence is made the standard by which the holder's right is determined, and diligence or the want of it are immaterial, except so far as they legitimately tend to es-

tablish or defeat the claim of a *bona fide* possession of the paper."

In other parts of the charge, at the request of the defendant, the court charged as follows : If the plaintiff knew generally that there was something wrong about the notes without knowing the details, it would be sufficient to put him upon inquiry and affect his title. If he was told there was something wrong about the note, without being told what, or if the facts fairly warrant the inference that he thought the notes were tainted with fraud, such general notice would prevent a recovery. If there was a wilful or fraudulent failure to inquire into facts inviting inquiry, the jury might regard such failure as notice, if they thought the failure was due to a belief that inquiry would result in knowledge of the fraud. Notice may be of two kinds : explicit notice of the fraud or illegality, and implicit or general notice. If the plaintiff when he bought the notes had notice or knowledge of some illegality or fraud which vitiated them, though he was not apprised of its nature, this would be such general notice as would affect his title. Mere negligence, however gross, not amounting to this wilful and fraudulent blindness, will not of itself amount to notice, but the jury may and should consider the fact of such negligence, as it may tend to prove such general notice. If you find that the notes were obtained from the makers by fraud, and that the plaintiff when he bought them had notice of the fraud or " had knowledge of such facts that his action in taking said notes amounted to bad faith," then, in either event, he cannot recover.

We think the law as stated in the extracts quoted from the charge is the law of this State ; *Ladd* v. *Franklin*, 37 Conn. 53, 64 ; *Credit Co.* v. *Howe Machine Co.*, 54 id. 357, 384 ; *Standard Cement Co.* v. *Windham Nat. Bank*, 71 id. 668, 684 ; and furthermore, we think it is the law as claimed by the defendant himself in his requests which the court read to the jury. We see nothing in the charge upon this part of the case of which the defendant can reasonably complain.

In regard to the fourth and fifth assignments of error, relating to the refusal of the court to charge two of the defendant's requests, it is, in view of the entire charge as given, sufficient to say that the court did not err in refusing to charge these requests.

The last assignment is to the effect that the court erred in failing to instruct the jury " as to the legal effect of a preponderance of evidence." The meaning of this is somewhat obscure. If it means that the trial court did not, in set phrase, say to the jury that the plaintiff must prove that he was the *bona fide* holder of the notes by a fair preponderance of evidence, the statement appears to be true. The court did say, repeatedly, that the burden of proving that he was the *bona fide* holder of the notes was upon the plaintiff, and that he was bound to prove the facts which made him such; but it did not say that he could do this by a fair preponderance. It may well be doubted whether the charge as it stands, upon this point, is as favorable to the plaintiff as it is to the defendant. The attention of the court was not called to the omission, nor does it anywhere appear that the defendant was harmed by it. Under these circumstances the omission complained of does not entitle the defendant to a new trial.

There is no error and a new trial is denied.

In this opinion the other judges concurred.